IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

MIDDLE DISTRICT, JUNE TERM 1833.

## Rodebaugh *against* Sanks.

That part of the act of assembly which provides " that all marriages shall be solemnized, by taking each other for husband and wife, before twelve sufficient witnesses," and that which requires a certificate of the marriage, &c. to be registered, and the publication of bans, is but directory.

In an action for the penalty provided by the act of assembly for marrying a minor, it is competent to prove that the father consented to the marriage ; and if proved, he can not recover the penalty, although the clergyman had not his certificate of consent when the ceremony was performed.

ERROR to *Clearfield* county.

Daniel Rodebaugh brought this action against James Sanks, to recover the penalty of 50 pounds provided by the act of assembly, for marrying his minor daughter. When the plaintiff had established his cause of action, the defendant offered to prove " that about a week previous to the marriage, when Hugh Frazier, he to whom the minor was married, was there, her father was at home, and treated him with respect and attention; that about that time, Rodebaugh, in conversation with his daughter, asked her why she did not get married, and told her that Hugh Frazier was a fine young fellow, and good enough for her; and added, why she did not get married to him?

This evidence was objected to, on the ground that it was previous

II.—B

to the marriage, and not communicated to the defendant; and that the consent of the parent must be evidenced by a certificate, as provided by the act of assembly.

The objections were overruled and the testimony given. The court also charged the jury, that if the father had consented to the marriage of his minor daughter which was solemnized by the defendant, he could not recover in this action. The jury found a verdict for the defendant. The admission of this evidence, and the charge of the court were assigned for error.

*Potter*, for the plaintiff in error.

If the conversations of a parent respecting the marriage of his minor daughter, uttered a week before the marriage, may be given in evidence to prove his consent, those uttered a month, or any other time, may also be proved; and if this be sufficient evidence upon which the clergyman, who violates a positive act of assembly, may escape its penalty, it is equivalent to the establishment of the principle, that consent once given shall never be withdrawn, however abandoned the suitor may become; whatever the parent may learn, during the course of his courtship, of his unfitness; however he may remonstrate against the marriage; however he may declare the conclusions of his judgment, to aid that of a minor daughter: he has *once* consented, and his daughter must be the sacrifice.

That the defendant violated the law is manifest; for even the consent which the father had once given, was never communicated to him.

*Petriken* and *Blanchard*, for the defendant in error.

The act of assembly, upon which this action is founded, makes provision to prevent *clandestine* marriages; and inflicts a penalty, to be recovered by *the party aggrieved*. Is then the marriage *clandestine*, when the father, one week before its solemnization, advises his daughter of its propriety? The argument, founded upon the presumption that the parent may change his mind, is unsound; for if he did change his mind, and urge his objections against the marriage, as he had his advice to it, this would have been the legitimate subject of proof. But, on the contrary, the proof is that the father consented and urged his daughter to marry the individual, and never changed his mind. Who, then, is aggrieved? If the penalty of the law be inflicted in this case, it will be a severe construction of it, and one calculated to be a source of money-making. The spirit of a penal law must characterize its construction. 2 *Yeates* 321. And the spirit of this one assuredly is, that the *consent* of the parent shall be obtained, that he may not be *aggrieved* by the marriage of his child.

The opinion of the Court was delivered by

Gibson, C. J.—Many provisions in the acts of 1700 and 1729,

though doubtless wholesome when they were enacted, are ill adapted to the habits and customs of society as it now exists.  It is not too much to say, that a rigid execution of them would bastardize a vast majority of the children which have been born within the state for half a century: for if the clause which requires that " *all* marriages shall be solemnized by taking each other for husband and wife before twelve sufficient witnesses" were taken, according to its natural import, for a declaration of what shall be a legal marriage, and what not; it would follow that a marriage contracted in any other form or way is void.  To escape from a conclusion imputative of guilt to the parties, and destructive of the civil rights of their offspring, it is necessary to hold, not only this clause, but those which require a certificate of the marriage under the hands of the parties and the twelve witnesses to be registered in the proper office, as well as publication of bans by posting on the church or court house doors, with other matters fallen into disuse, to be but directory.  The present action is brought on the second section of the act of 1729, for the penalty supposed to be incurred by having married the infant daughter of the plaintiff, in the county where he resided, without publication of bans, or a certificate of his consent had; and the proviso which immediately follows this section, is also liberally to be expounded.  Restrained to its proper uses, the prohibition is a salutary one, which conduces essentially to the welfare of the infant, and affords a just protection to the rights of the parent or master; but it was never designed to be an instrument of fraud, or to give remedy to one whose actions evince that he did not consider himself injured. According to the letter of the act, a father actually present, consenting to the marriage, and wishing it God speed, might turn to the officiating minister or magistrate at the conclusion, and demand the penalty of him, because the bans had not been published or a license procured with his approbation certified in the body of it. Such a pretension would be monstrous; yet in the case of a marriage, not in the parent's presence, but in pursuance of his verbal consent, the injustice of the forfeiture, though less glaring, would be equal in the degree.  To inflict the penalty on one who may have been decoyed into the forfeiture of it, by the acts of him who claims it, would be intolerable; and I take it to be a sound construction of the statute, to hold the party irresponsible wherever the parent has actually given his consent, whether in the form of a certificate or verbal declaration.  In the case under consideration, it was in evidence, that the plaintiff not only encouraged the addresses of him who has since married his daughter, by inviting him to the house, and leaving them together on proper occasions, but reproached her with want of alacrity in bringing the affair to the desired conclusion. If this were believed, it would have been an abuse of the statute to have made it the foundation of a recovery.  Except that the ceremony was not performed in the plaintiff's house, there was nothing in the transaction to distinguish it from others in the ordinary course;

[Rodebaugh v. Sanks.]

and even that can scarce be viewed as an exception, for it is still a common practice among country people in many parts of the state to send the wedding party to the village or town where the clergyman resides.  As to the admitted fact that the plaintiff's consent had not been expressed directly to the defendant, it is sufficient that the latter may have acted on the information of those in whom he could confide.  But the main objection to the action is, that the statute was not designed for a money-getting means, and would be perverted by being turned to the plaintiff's assistance.

Judgment affirmed.