## Case No. 9,398.

MEISTER v. BISSELL et al.

SAME v. MOORE et al.

[22 Pittsb. Leg. J. 85; 32 Leg. Int. 5.]

Circuit Court, W. D. Pennsylvania. Dec. 21. 1874.[1]

MARRIAGE—IN MICHIGAN—HOW CELEBRATED.

Under the statutes of Michigan, it is essential to the validity of a marriage that it shall have been solemnized in the presence of a minister or magistrate and at least two witnesses.

[These were actions in ejectment brought by Rebecca Meister, executrix of Bernard L. Meister, against F. H. Bissell and others. and by the same plaintiff against Robert C. Moore and others, for the possession of certain property.]

Marston, Hatch & Cooley, of Bay City, Michigan, Ferguson & Murray, and Weir & Gibson, for plaintiff.

Holmes & Haynes, of Bay City, Michigan, Schoyer Acheson, Morrisons & Palmer, for defendants.

McKENNAN. Circuit Judge (charging jury). Both parties claim the property, which is the subject of these suits under Dr. Peter Mowry, and thence to W. A. Mowry, one of his sons. The plaintiff is the alienee of the alleged wife and daughter of Wm. A. Mowry, and the defendants are his mother's vendees. Mrs. Eliza Mowry, in whom the title of the property was vested if he died unmarried and without issue. It is obvious then that the fundamental question in the case is, whether the Indian woman alleged to have been Mowry's wife was united to him by a valid marriage, and this is to be determined by the laws of the state where the marriage contract was made. So the plaintiff's counsel have requested me to instruct you, in the second point submitted by them, and that point is accordingly affirmed. The alleged marriage took place in the state of Michigan, in the

---

[1] [Reversed in 96 U. S. 76.]

latter part of the year 1845. From 1833, when the present state of Michigan was a territory, down to the present time, a statute on the relation of marriages has been in force, and during that period it has remained without essential changes. So far as we are advised, and we have had the benefit of the knowledge and researches of learned counsel from that state, on both sides, of these cases, there has not been any judicial construction of that statute or any determination of its effect, upon the marriage contracts, not made in conformity with its requirement. The only case touching it, to which we have been referred, decides that in so far as the age of consent is fixed by it, the common law is abrogated. We are therefore, left without the guidance of an authoritative exposition to ascertain its meaning, and declare its effects upon the marriage in question. The sixth section of the act authorizes the solemnization of marriages by justices of the peace, within the counties for which they are respectively chosen, and by resident or ordained ministers of any denomination at any place within the state. By the eighth section it is provided that "in the solemnization of marriages, no particular form shall be required, except that the parties shall solemnly declare in the presence of the magistrate or minister and the attending witnesses, that they take each other for husband and wife. In every case there shall be at least two witnesses besides the minister or magistrate, present at the ceremony." The requirements of the section are imperative and its meaning clear. It is expressly applicable to every case of the solemnization of marriage, or in other words, of the proposed creation of the marriage relation. No particular form is required to be observed in any case, but a magistrate or minister prescribed in the sixth section, and two witnesses shall be present, and before them the parties shall solemnly declare their assent to the contract. The co-existence of both conditions is imperatively prescribed, and the fulfilment of each is, therefore, indispensable to the lawful creation of the marriage relation.

This construction of the section is confirmed by subsequent sections of the act. Thus, the 14th section declares that, "No marriages solemnized before any person professing to be a justice of the peace, or a minister of the gospel, shall be deemed or adjudged to be void, nor shall the validity thereof be in any way affected on account of any want of jurisdiction or authority in such supposed justice or minister: provided, that the marriage be consummated with a full belief on the part of the persons marrying, or either of them, that they have lawfully been joined in marriage." Does not this recognize the necessary presence of a minister or magistrate invested with the jurisdiction defined in the sixth section of the act, at the solemnization of marriage, and declare in effect that only when it is solemnized in the presence of a person pro-

fessing such character and authority, under a full belief of the persons so married, or either of them, that the pretended magistrate or minister was really such, shall not be deemed or adjudged invalid. But if the false pretence was known before the nuptials, or was discovered before the consummation of the marriage, is not the indication clear that the marriage shall be deemed or adjudged to be void? More certainly then would this result follow, where the presence of either of these functionaries was wilfully pretermitted. No less significant in this connection, is the next section of the act, which is in these words: "The preceding provisions, so far as they relate to the manner of solemnizing marriages, shall not affect marriage among the people called Friends or Quakers, nor marriages among the people called Mennonists. But such marriages may be solemnized in the manner heretofore used and practised in their respective societies." Now this section is certainly not to be assumed to be meaningless or intended to have been ineffective. What reason can there be assigned for its insertion, if it be not upon the hypothesis that the eighth section, to which it plainly refers, prescribed essential conditions in the ceremonies of marriage which were exclusive of all different modes of solemnizing it? It is well known that among the Quakers at least, there were no ordained ministers, and that in the solemnization of marriage among them the agency of a minister or civil magistrate, was not permitted. According to their practice, marriage was contracted by the declared acceptance by a man and woman of each other, as husband and wife in the presence of witnesses. This comprehended all that the common law required to constitute marriage, but it did not embrace all that the eighth section of the act prescribed. Why then were these people relieved from observances of the requirements of this section, when they omitted but a single one—the presence of a minister or magistrate—if such an omission would not otherwise invalidate the contract? Can there be any sufficient answer to this question, other than this, that the fulfillment of all the requirements of the section was essential to the validity of marriage, but as the observance of one of them was not practicable among Quakers, it was therefore necessary, to save the validity of their marriage, to exempt them from the operation of the section?

It is said, however, by some text writers, whose opinions are entitled to respect, that statutes regulating marriage are not to be construed to avoid marriages contracted in violation of some of their provisions, unless the acts contained express words of nullity. Although there is high authority against this statement of the law, it certainly has the apparent support of a number of decisions by courts of great respectability. But it should be predicated of what, in the sense of the statute, may be treated as irregularities, and

of a non-observance of provisions simply directory, not of a disregard of conditions prescribed to be performed when the contract of marriage is made, and which constitute essential elements of the mode of its solemnization. The supreme court of Pennsylvania has gone beyond this, but not for the reason upon which the rule is stated to rest, declaring that the colonial acts of 1700 and 1729 had outlasted their adaptation to the habits and customs of society, they gave a constructive effect to a clause in those acts, substantially like the 8th section of the Michigan statute, confessedly against its natural import, that they might thereby avert the extended social mischief which would result from its rigid execution. Rodebaugh v. Sanks, 2 Watts, 11. But this court has no such dispensing power with regard to the Michigan statutes. It is not so old that it has grown into disuse. It is a cherished feature of the policy of the state in reference to a subject which it has wisely undertaken to regulate. Whatever its true import is, must be accepted by tribunals, at least as its intended meaning and effect must be given to it accordingly. If the jury, therefore, find that neither a minister nor a magistrate was present at the alleged marriage of Wm. A. Mowry and the daughter of the Indian Perot—and such is the plaintiff's own proof—they are instructed that such marriage was invalid under the Michigan statute, and their verdict in such case should be for the defendants.

[A writ of error was sued out from the supreme court, where the judgment of the court below was reversed and a new trial ordered. 96 U. S. 76.]