# THOMAS HATFIELD v. THE COMMONWEALTH.

## ERROR TO THE COURT OF QUARTER SESSIONS OF TIOGA COUNTY.

Argued May 3, 1888—Decided May 14, 1888.

1. On the trial of an indictment for the unlawful sale of "spirituous, vinous, malt and brewed liquors," in violation of a statute making such sale a misdemeanor, it is immaterial whether the liquor sold by the defendant was intoxicating or not, or how much alcohol it contained.
2. Section 2, act of April 12, 1867, P. L. 1178, making it an indictable offence for any person to sell any spirituous, vinous, malt or brewed liquors, within two miles of the Normal School at Mansfield, Tioga

county, is unconstitutional, because obnoxious to the constitutional amendment of 1864, prohibiting the passage of a bill containing more than one subject, which shall be clearly expressed by its title.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 143 January Term 1888, Sup. Ct.; court below, No. 19 November Term 1886, Q. S.

On November 24, 1886, the grand jury returned as a true bill an indictment charging "That Thomas Hatfield, late of said county, yeoman, on the twenty-eighth day of September, and as well before as after said mentioned date, in the year of our Lord one thousand eight hundred and eighty-six, at the county aforesaid and within the jurisdiction of this court, with force and arms, etc., did unlawfully sell spirituous, vinous, malt and brewed liquors for drinking purposes within a radius of two miles of the Normal School at Mansfield in said county of Tioga and state of Pennsylvania, contrary to the form of the act of the general assembly in such case made and provided, and against the peace and dignity of the commonwealth of Pennsylvania," an offence alleged to be in violation of § 2, of the act of April 12, 1867, P. L. 1178, which with its title is as follows :

An act to prohibit the issuing of licenses within two miles of the Normal School at Mansfield, Tioga county, Pennsylvania.

Section 1. Be it enacted . . . . . That from and after the passage of this act no license shall be issued to any person, or persons, to sell any spirituous, vinous, malt, or brewed liquors, for drinking purposes, within a radius of two miles of the Normal School at Mansfield, Tioga connty, Pennsylvania.

Section 2. That if any person, or persons, shall, for purposes aforesaid, sell any spirituous, vinous, malt, or brewed liquors, as aforesaid, after the passage of this act, within the limits aforesaid, he or she, upon conviction thereof, shall be fined, in a sum not less than fifty nor more than two hundred dollars, and upon a second conviction thereof, in addition to the fine already imposed, shall undergo an imprisonment, in the county jail, for a period of not more than three months : Provided, however, That persons who are already licensed to sell spirit-

uous, vinous, malt or brewed liquors, as aforesaid, shall not be prevented from selling the same until after the expiration of their license.

At the trial on January 28, 1887, a number of witnesses testified for the commonwealth that within two years they had bought of the defendant at his place of residence, within two miles of the Normal School at Mansfield, in quart or pint bottles or by the gallon, a kind of wine to drink, manufactured by the defendant from grapes and other fruits, which, however, was not intoxicating; the wine they bought was not drank upon the premises.

The defendant testified in his own behalf, that he made several kinds of wines; of grapes, blackberries, oranges, currants, and pine-apples; " I take three pounds of fruit and get the juice out of it, and mix three pounds of sugar with that juice and put it in a gallon jar and fill it up with water, and in the same proportion when I make more;" that it was not intoxicating, and had but about two per centum of alcohol in it; he had sold it openly and above-board, but had not sold any since he was told he must not sell it.

The defendant requested the court to charge the jury:

1. The evidence shows that the defendant sold only wines of his own manufacture, and at the place where manufactured, by the bottle and not to be drank on the premises; he cannot therefore be convicted of selling wine in violation of the provisions of the act of April 12, 1867.[2]

2. That there was no evidence that the alleged wine sold by the defendant was intoxicating, and the verdict of the jury should be, not guilty.[3]

These points were answered in the charge of the court, WILLIAMS, P. J., which was as follows:

The defendant is indicted for selling intoxicating drinks within two miles of the State Normal School at Mansfield.

In 1867 an act was passed for the protection of that school, and it has since been extended to other Normal schools. It provides that no liquor can be sold, nor can any license be granted for its sale for drinking purposes within two miles of the State Normal School. The defendant is indicted for a violation of this act by selling within a radius of two miles of

this school. . Two questions are raised. One is perhaps a question of fact for the jury ; and that is, whether wine has been sold, about which, however, the evidence is not conflicting. The evidence on the part of the commonwealth, and the testimony of the defendant, concur in the statement that he sold as wine a fermented liquor, containing at least two or three per centum of alcohol. The drink was made by taking three pounds of grapes or other fruit, and three pounds of sugar and a gallon of water, putting them together and allowing them to ferment. Defendant says the elements of the wine put together in August would be ready for sale in February. They would have gone through the necessary process of fermentation and settling. [Now, gentlemen, we are going to relieve you from any trouble about the question of fact in this case, and say to you that the object of this law was to prevent the sale of alcoholic drinks, and whether they had two per centum or ten or twenty is not the question upon which the guilt or innocence of the defendant depends.][4] [The object of this law was to protect the young men that are gathered at this institution, and to prevent the formation of the drinking habit. We are going to instruct you that if you find this drink to have been alcoholic, whether it had two or ten per centum is a question with which you need not trouble yourselves. We instruct you that the sale of any alcoholic drink is a violation of this law.][5] This disposes fully of the first point submitted to us by defendant's counsel.

It is unnecessary for us to give the reason for our holding. It is however very easy for the jury to see that at one per centum at a time, the strength of this drink might be increased and the protective value of this statute might be utterly destroyed, if we were to hold any other rule than that we have held. The prohibition of this act is directed against the sale of alcoholic drinks and [whether one who has drank a quart of this wine has felt himself intoxicated by reason of it or not, it is unnecessary for us to inquire.][6] If this alcoholic drink or wine, made by the process of fermentation, resulted in the production of a certain amount of alcohol in the drink offered for sale as wine, we instruct you to regard it as within the provisions of this act of assembly.

The other question is one of much more difficulty. We have,

as has been well said by one of the counsel for the defendant, an almost incomprehensible system of license laws. It has been the result of legislative piece work, little at a time. Sometimes the legislature has gone forward and sometimes backward. It is very difficult to get at its true meaning under the present disconnected and inharmonious legislation; it is not such a complete and consistent system as a lawyer would like to find and we would be very glad to conform to. There are three kinds of persons who are permitted to handle intoxicating drinks. There is first the person who makes the drink. He is looked upon by the law simply as the manufacturer, and his right to sell is not obtained from the courts but by payment to the county treasurer. He sells to those who sell again. Then next after the manufacturer comes the seller by the quantity, properly called the retail dealer, more frequently spoken of as the wholesaler. He sells by the quart or gallon, or in any quantity above a quart, if the liquor be brewed or malt. This class of dealers are forbidden to sell it to be used upon the premises. They sell and handle the article as dealers, and are supposed at least, not to come in contact with the consumer. Then comes the class of persons who actually consume or drink it. These may be either the hotel keeper, the restaurant or saloon keeper or the druggist. The hotel keeper may sell to persons who are his guests, persons who come to his bar; he may sell by the drink or pint. The druggist singularly enough, though forbidden by law, is rapidly becoming the great dealer in intoxicating drinks in the commonwealth, and I think as a rule we may say, without going at all beyond the bounds of what all men know to be true, utterly disregards and daily and habitually violates the law.

The position taken by the counsel for the defendant is, that the defendant does not belong to either of these classes of venders; that he is not one of those who demand a license from the court like a distiller and brewer; that he has simply to go to the county treasurer and procure his license; he embarks in his business without our leave, and without having done anything else to protect the public, other than to have made his application to the county treasurer. The seller whether in hotel or restaurant, and the bottler, go to the court for their licenses. We hear the application, and hear the objections to

it if there are any made, and their rights are settled by the several acts of the assembly. We are asked to say to you that the defendant in this case is a manufacturer, and we are inclined to think that is his actual position. He is not a keeper of a hotel, or restaurant, or a druggist. He is engaged in none of the kinds of business that would bring him under the class we have spoken of. If this question were raised outside of the two miles radius of the State Normal School we should affirm the second point; we should say that the defendant as a manufacturer had the right to sell within the limits allowed by law to persons who bought and took away the unbroken packages, providing himself with no place where they could be drank, and being himself, as in this case, no way connected with the entertainment of the public. But we have to look at the purpose of this law, and the present inclination of our mind is to hold that the purpose of its framing was to prohibit the selling by anybody, manufacturer, distiller, or bottler, of intoxicating drinks in any form within two miles of the Normal School. While we regard the position taken by defendant's counsel tenable under ordinary circumstances, as applicable to any other district in the county except this little circle, we are inclined to hold it is not applicable to that. And if we were otherwise to hold we should practically strike down all the protection which the legislature intended for that school. This is a question that is purely one of law. It is one that we can review. But for the present purposes of this trial we instruct you that the defendant had no right to sell within two miles of the State Normal School any form of alcoholic drink, whether he was hotel keeper, druggist or manufacturer; that the purpose of the act of 1867 was to protect absolutely the territory in the circle drawn, from the sale of intoxicating drinks for drinking purposes. If therefore, you believe the defendant sold wine to be drank anywhere within the two miles radius, your verdict ought to be, guilty in the manner and form as he stands indicted.

The jury returned a verdict of guilty. A motion for a new trial was subsequently refused by WILSON, P. J., when the defendant obtained this writ and assigned for error, inter alia:

2, 3. The refusal of defendant's points.[2] [3]

4–6. The parts of the charge embraced in [ ] [4 to 6]

7. The instruction that the defendant could be convicted under § 2, act of April 12, 1867, for the reason that the purpose of the act as shown by its title was only to prevent the granting of licenses, and the construction given to said act by the court, would render said act unconstitutional.

*Mr. J. W. Adams* and *Mr. M. F. Elliott* (with them *Mr. F. E. Watrous*), for the plaintiff in error:

1. It was conceded by the court below that at the time this special act was passed, manufacturers of domestic wines had the right to sell the same at the place of manufacture, by the bottle, without license, provided such wine was not drunk upon the premises : § 8, act of April 20, 1858, P. L. 367. It seems then to be quite clear that the act of April 12, 1867, the title to which is, " An act to prohibit the issuing of licenses within two miles of the Normal School at Mansfield, Tioga county," was not intended to apply to manufacturers of domestic wines, so long as they should sell in accordance with § 8, act of April 20, 1858.

2. Any other construction would be in violation of the well settled rules for construing statutes, and would, moreover, render § 2 of the act of 1867 obnoxious to the constitutional amendment of 1864: " No bill shall be passed by the legislature containing more than one subject, which shall be clearly expressed in the title :" Eby's App., 70 Pa. 311 ; Penn. R. Co. v. Riblet, 66 Pa. 169.

3. Again: The act of 1867, contains no repealing clause ; yet if the construction of the court below be given to it, it repeals § 8, act of April 20, 1858. But all statutes in pari materia should be construed together and so that all may stand if possible ; and, construing the act of 1867 as we contend for, the two acts are reconciled and both stand. Such construction is confirmed by the opinion construing the effect of the act of 1875 upon the act of 1855, in relation to selling liquors on Sunday : Sifred v. Commonwealth, 104 Pa. 179.

4. We think the court erred in refusing to affirm the second point. The witnesses examined on the part of the commonwealth and defendant all testified that the alleged wine which was sold by the defendant was not intoxicating. It seems to

us the legislature had no power to prohibit the sale of a fluid which was neither intoxicating nor hurtful to the person drinking it.

*Mr. John W. Mather, District Attorney* (with whom were *Mr. Robert K. Young* and *Mr. George W. Merrick*), for the defendant in error:

The evil which the amendment to the constitution was intended to remedy was what was known as "omnibus legislation," embracing in one act many subjects, with a title relating to but one of such subjects. The subjects of legislation under that usage could not be ascertained from the title, but required a perusal of the whole bill. This act contains but one subject; the title relates to the same subject and is not misleading; it need not be an index to the act. The act in terms prohibits sales to any person, and the title prohibits licenses to sell—pertains to the same subject and is sufficiently clear. The adjudicated cases sustain the constitutionality of this local law: Yeager v. Weaver, 64 Pa. 428; Allegheny Co. Home's App., 77 Pa. 80. Nothing but a clear violation of the constitution, a clear usurpation of power prohibited, will justify the judicial department in pronouncing an act of the legislative department unconstitutional: Penn. R. Co. v. Riblet, 66 Pa. 169; Blood v. Mercelliott, 63 Pa. 391.

OPINION, MR. JUSTICE PAXSON:

The defendant below was convicted of unlawfully selling "spirituous, vinous, malt and brewed liquors for drinking purposes within a radius of two miles of the Normal School, at Mansfield, in the county of Tioga." The indictment was laid under the act of April 12, 1867, entitled "An act to prohibit the issuing of licenses within two miles of the Normal School, at Mansfield, Tioga county, Pennsylvania," the first section of which forbids the granting of any license within the designated territory, to sell any of the liquors above stated; and the second section of which prohibits their sale by any one within the said limits, and imposes a fine of not less than fifty nor more than two hundred dollars for a first conviction of such offence, and both fine and imprisonment upon a second conviction.

The defendant resided at Mansfield, and was engaged in the manufacture of domestic wines, which he sold by the bottle to some extent, but not for drinking on the premises. It was conceded that he could not be convicted of this under the general laws in force at the time the defendant was indicted, for the reason that under the eighth section of the act of April 20, 1858, P. L. 365, producers of cider and domestic wines, who are not otherwise engaged in the liquor traffic, are permitted to sell by the bottle without license, " provided that such liquor is not drank upon the premises where sold, nor at any place provided by the seller for that purpose."

Upon the trial below, the defendant asked the court to instruct the jury that " there is no evidence that the alleged wine sold by the defendant was intoxicating, and the verdict of the jury should be, not guilty." The learned judge refused this instruction very properly. The inquiry was whether the defendant sold vinous liquor ; if he did, the act prohibited such sale and imposed a penalty upon the offending party. Just how much alcohol there might be in the wine was foreign to the issue.

The second and only other ground of defence which we shall notice was that the title of the act does not sufficiently indicate its object, and that the act itself for this reason is unconstitutional.

The title of the act is notice to all the world that no licenses will be granted to sell liquors within two miles of the Normal School. The first section was strictly germane, as it merely prohibited the granting of licenses within said territory. The second section made it an offence, punishable as therein provided, for any person to sell spirituous, vinous, malt, or brewed liquors for drinking purposes within the prescribed territory.

It is difficult to see the object of the second section if it was intended to affect only persons living in Mansfield, or within the radius referred to, who were not entitled at the time of the passage of the act to sell vinous liquors without a license ; as to all such persons, there was no necessity for its passage, as the offence of selling without license was punishable under the general law of the state. But the general law would not reach the case of this defendant, and perhaps others, who, as before observed, were protected by the act of 1858. It is manifest,

we think, that the purpose of the act of 1867 was to prohibit the sale of vinous liquors by this class of persons. This purpose could have been attained by a direct repeal of the act of 1858 ; or, the act of 1867 would perhaps have been sufficient had the title conformed to the constitutional requirements. It contains two distinct subjects, and only one of them is referred to in the title. A saloon keeper in Mansfield, upon looking at the title, might fairly infer that the act would contain a section punishing him for selling after his license had expired. He would know in any event that he could be punished under the general law for selling without license. But how could this defendant, or a farmer, living within the radius, know, or what was there in the title to put him upon inquiry, that he could no longer sell the cider made from his own apples, or the wine from his own grapes, as he had been accustomed to do in the past ? What was the question of license or no license to him? He had never been required to take out a license to sell his own cider or wine by the bottle, and certainly he had no reason to suppose that an act, the title to which referred only to the prohibition of license, would in any way affect him.

The title to this act is so palpably misleading that we are constrained to say that the second section thereof cannot stand. The first section is not open to this objection, so that the prohibition as to granting licenses within two miles of the Normal School remains in force ; and, while we sincerely regret, for the good of the children at the school, that the second section of the act of 1867 cannot be sustained, a partial remedy may perhaps be found in the present license law which prohibits the sale of vinous liquors to minors. I do not think that the eighth section of the act of April 20, 1858, was intended to authorize the sale of " cider and domestic wines " to children, by any one.

>            For the reasons given this judgment must be
> reversed.