## Sahutsky v. E. G. Budd Mfg. Co.

*Milford J. Meyer*, for claimant.
*Glenn A. Troutman*, for defendant.

SMITH, P. J., October 1, 1945.—This matter comes before the court on an appeal by defendant from the decision of the Workmen's Compensation Board affirming the referee's findings of fact, conclusions of law and award.

There is sufficient competent and satisfactory evidence to support the findings of fact made by the Workmen's Compensation Board that claimant's husband was killed as the result of an accident during the course of his employment by defendant company; that claimant and her decedent, prior to the accident, had entered into a common-law marriage; that the claimant was dependent upon him for support; that a minor child, Joan Sahutsky, born as the result of this relationship, was the daughter of the decedent and was dependent upon him for support. Such findings are therefore conclusive upon this court: Balaban v. Severe, 157 Pa. Superior Ct. 463, 467; unless the facts as found are in contravention of the law: Wydra v. Philadelphia & Reading Coal & Iron Co., 153 Pa. Superior Ct. 529;

Locke et al. v. Provident Trust Co. et al., 306 Pa. 478, 482.

The question presented in this appeal is a legal one. An exception is taken by defendant to the statement in the opinion of the compensation board, which is as follows:

"Common-law marriages have been a recognized institution in this Commonwealth for a long period of time. We would hesitate to outlaw such marriages except by clear expression of the legislature or decree of our appellate courts. We are not prepared to say, nor is it necessary for the purpose of the present opinion, to determine whether a health certificate was a prerequisite to a valid common-law marriage between the parties hereto on March 31, 1942. Since the common-law marriage as well as the death of Sahutsky occurred prior to the date of the Superior Court's opinion, we are constrained to hold that the marriage was valid and that the Act of May 17, 1939, did not apply. The award to Sarah Sahutsky must be affirmed."

An examination of the records in this case would indicate that neither on examination or cross-examination was this claimant asked by counsel whether or not she had first secured a license to enter into this common-law marriage, so that that matter is not now before the court and we are of the opinion that the award must be affirmed.

There is nothing illegal about common-law marriages. They have been recognized as valid by the courts of Pennsylvania from the earliest days of this Commonwealth, and there has been no action taken by the legislature tending to make them invalid. Even though this claimant and her decedent failed to first secure a license to wed before engaging in common-law marriage, we do not believe that the Act of May 17, 1939, P. L. 148, applies. The act had primarily to do with the regulation of the issuance of licenses to persons affected with syphilis in certain stages. It pro-

vides that the applicant must present a health certificate and imposes penalties for any infractions of the statutes. The act provides:

Section 1. That no license to marry shall be issued until certificates are produced showing the applicants are not infected with communicable syphilis.

Sec. 2. Defines the test for the disease.

Sec. 3. Provides for an appeal in case of a refusal to issue a license.

Sec. 4. Prescribes the form of physician's statement.

Sec. 5. Provides for the imposition of a small fine (such as not less than $20 nor more than $100) and imprisonment (a short term of not less than 10 days and not more than 30 days) upon

(a) any applicant for a license, physician or laboratory representative, who misrepresents the facts;

(b) any licensing officer who fails to receive this statement;

(c) persons who disregarded the confidential character of the information; and

(d) any other person who otherwise fails to comply with the provisions of the act.

It is therefore manifest that the intent of the legislature, as shown in this act, was to provide means for the issuance of marriage licenses, the conditions imposed upon the applicants, etc., and the imposition of a penalty in the way of a fine or imprisonment in the event of infraction of the provisions of the act by the various parties named therein. There is not the slightest reference to common-law marriages in the title of this act.

"We cannot look beyond the title and into the body of the bill to determine the validity of the legislation. The title must speak for itself and clearly declare the legislative purpose. The investigator has the right to rely solely on the title without scrutinizing the body of the bill for information as to the subject of the pro-

posed legislation": Provident Life and Trust Company v. Hammond, 230 Pa. 407, 414; Stewart et al. v. Hadley, 327 Pa. 66, 75.

"We have also steadily held to the requirement of a *clear* expression, in contradistinction to one which can only be reached by a process of reasoning . . .": Phillips's Estate, 295 Pa. 349, 353; Hatfield v. Commonwealth, 120 Pa. 395. Not only is there no reference made to the well-recognized marriages of common law in the title of the act, but indeed in the act itself no reference is made to marriages of common law.

Common-law marriages have been recognized by our courts as a legal union and a valid civil contract from the earliest days. Indeed in Stump v. Stump, 111 Pa. Superior Ct. 541, 546, Judge Keller (later president judge) said:

". . . we must bear in mind that the law of this State recognizes a common-law marriage as valid, legal and binding."

To the same effect, many opinions of the appellate court of this Commonwealth have so decided. There have been several marriage license acts passed by the assembly of this Commonwealth and in none of them has any reference been made to common-law marriage. Indeed, the Act of June 23, 1885, P. L. 146, known as the Marriage License Act, makes no reference to common-law marriages and our appellate courts since that time, and up to the present, have held that common-law marriages were valid. We do not believe that the Act of May 17, 1939, supra, in any way affects common-law marriages. While it may be a public health measure and should be so construed to effectuate that purpose, nevertheless, the legislation itself does not say that it in any way had any effect upon marriages of common law. This act of assembly, while it is a health measure, only provides for a nominal fine of from $10 to $100, or a short-term imprisonment of from 10 days to 30 days, in the event of any infractions of the provisions

of the act. It does not state that the marriage is invalid if performed contrary to the provisions of the statute. The courts of this Commonwealth have held on many occasions that marriage license acts are directory only and not mandatory unless they express words of nullity. In Hornbake v. Hornbake, 72 Pa. Superior Ct. 605, 607, Williams, J., stated that while the failure of the parties to comply with such acts (providing for the procuring first of a license to wed) may lay them open to prosecution or fine, the marriage relation is not voided thereby. See also Rodebaugh v. Sanks, 2 Watts 9; Helffenstein v. Thomas, 5 Rawle 208. The legislature, if it had so intended, could have clearly and emphatically regulated common-law marriages so as to first provide for a license to wed based upon a medical examination. It is our opinion that since the legislature failed to provide for a proper method of entering into a common-law marriage, that the courts cannot legislate this question. All civic-minded people are in favor of any legislation which will properly suppress the spread of the dread disease, syphilis, and we would welcome any legislation which would definitely tend to suppress it. The courts may by dictum point out the way to the legislature, but the courts themselves cannot legislate. In Hulett v. Carey, admr., et al., 66 Minn. 327, Mitchell, J., said (p. 338):

"In view of the increasing number of common-law widows laying claim (in many instances, doubtless, fraudulently) to the estates of deceased men of wealth, it is a question for the legislature whether the common law should not be changed; but with that the courts have nothing to do."

In Stevenson's Estate, 272 Pa. 291, where there was an issue about the common-law marriage, the court held (p. 300):

"It is quite true where an undoubted marriage exists in some form, courts, for obvious reasons, should hesitate to strike it down."

Since the Act of 1939 contains no express words of nullity, we must hold that it is only directory and not mandatory. In Biesecker's Estate, 7 Dist. R. 70 (1898) where no marriage license had been issued, the question was raised as to how the validity of the marriage had been affected by the provisions of the Act of 1885. Edwards, J., stated:

"The Act of 1885, according to its title, relates to marriage licenses and provides for officers to issue licenses for parties to marry. Section 1 says that 'No person within this Commonwealth shall be joined in marriage until a license shall have been obtained for that purpose.' It then proceeds to prescribe the form of certificates, the method of obtaining the license and of keeping the records, the duties of parents and guardians, and the penalties on officers and ministers who fail to comply with the regulations of the act. A penalty of $100 is imposed upon the minister, justice or other officer who shall solemnize a marriage ceremony without a license having been first obtained by the parties marrying. Nowhere in the act is it stated that such a marriage shall be void. It is true that, according to the first section, no persons shall be joined in marriage without a license; but this phrase may refer to the act of the person solemnizing the marriage as well as to that of the persons about to marry. The expression is much too weak and insignificant to indicate a legislative intent to declare a marriage invalid if performed without a license.

"Statutes regulating the celebration of marriages have been invariably construed so as to uphold the marriage relation whenever possible. Bishop, in his work on Marriage and Divorce, vol. 1, § 283, says: 'It has become established in authority that a marriage good at the common law, is good, notwithstanding the existence of any statute on the subject, *unless the statute contains express words of nullity.*' Justice Strong, in the case of Meister v. Moore, 96 U. S. 76, at the con-

clusion of an elaborate opinion, says: 'In the absence of a positive statute declaring that all marriages not celebrated in the manner therein prescribed shall be void, any marriage regularly made according to the common law, without observing the statutory regulations, is a valid marriage.' Many authorities might be cited which establish this same principle, but we consider the question so well settled that further citation is unnecessary."

In Shouey v. Shouey, 16 D. & C. 693, Copeland, P. J., stated (p. 696):

"In the absence of a positive statute declaring that all marriages not celebrated in the manner therein prescribed shall be void, any marriage regularly made according to the common law, without observing the statutory regulations, is a valid marriage: Meister v. Moore, 96 U. S. 76. It has become established in authority that a marriage good at the common law is good notwithstanding the existence of any statute on the subject, unless the statute contains express words of nullity: Biesecker's Estate, 7 Dist. R. 70. Acts which provide for the obtaining of licenses are directory and not a declaration of what shall constitute a legal marriage and what not. It does not follow that a marriage contracted in any other form is void: Rodebaugh v. Sanks, 2 Watts 9. Also, Helffenstein v. Thomas, 5 Rawle 209." (See also Greene v. Brandt, 13 D. & C. 712.)

While it is contended that the Act of 1939 has the aspects of a remedial statute, it must be remembered that even a remedial statute will not be stretched to cover a case where no jurisdiction whatever attaches. In the case of Halderman v. Young, 107 Pa. 324, Mr. Justice Gordon stated (p. 326):

"It is to no purpose to insist on the general equity powers of the court of common pleas over the estates of persons *non compos mentis*, for, whilst those powers are admitted, they must, nevertheless, be exercised ac-

cording to the prescriptions of the statute, and to them must that court look not only for the manner in which its power is to be exercised, but also for its jurisdiction."

Courts cannot extend a statute to meet cases not within its scope however meritorious they may be: Indianapolis Northern Traction Co. et al. v. Brennan et al., 174 Ind. 1.

The liberal construction of a statute only requires that the statute be so enforced as to carry into effect the will of the legislature as expressed in the terms thereof and to give not stintedly or niggardly, but freely and generously, all the statute purports to give. It does not, however, warrant an extension of the statute to the suppression of supposed evils or effectuation of conjectural objects and purposes, neither referred to nor indicated by any terms used not clearly within the spirit of the legislation: 25 R. C. L. 1076, sec. 298, Kellar v. James, 63 W. Va. 139, 59 S. E. 939. A remedial statute must be construed liberally so as to afford all the relief within the power of the court which the language of the act indicates that the legislature intended to grant: 25 R. C. L. 1077, sec. 299; Lehigh Bridge, etc., Co. v. Lehigh Coal, etc., Co., 4 Rawle 9.

The only other State recognizing common-law marriages, and having a statute similar to the Pennsylvania Act of 1939, is Alabama. There the Act of 1919, p. 169, codified in 1923, section 1156, requires that male persons making application to the judge of probate for license to marry shall be examined for venereal disease and providing the judge shall not issue license to any person who fails to present certificate setting forth that such person is free from venereal diseases. In the case of Woodward Iron Co. v. Dean, 217 Ala. 530 (1928), where the question arose as to the right of a claimant to recover workmen's compensation for the death of her deceased common-

law husband, where no license had been obtained to wed, Thomas, J., said (p. 533):

"Thus we are brought to a decision of the question whether after the passage of the Act of 1919, p. 169, §1, codified as section 1156, Code of 1923, there may be a common-law marriage in this State. The statute requires that male persons 'making applications' to the judge of probate 'for license to marry' shall be examined as to venereal disease, 'and the judge of probate of any county shall not issue a license to marry to any person who fails to present and file with such judge of probate a certificate setting forth that such person is free from venereal diseases so nearly as can be determined by a thorough examination and by the application of recognized clinical and laboratory test of scientific search, when in the discretion of the examining physician such clinical and laboratory tests are necessary.' The provided certificate of the examination by a licensed physician should contain the words:

" 'No marriage shall be entered into in any manner whatsoever without the male party shall have first submitted to said ante-nuptial examination and have obtained a certificate from such physician of his freedom from said diseases.'

"This is directory and is not such a positive statutory inhibition having the effect of preventing a marriage of the parties under the common law without such examination by a physician, and his certificate, and rendering the same void and without legal effect and not binding upon the parties to such a marriage. Note the analogy contained in Smith v. Smith, 205 Ala. 502, 88 So. 577; Owen v. Coffey, 201 Ala. 531, 78 So. 885; Raia v. Raia, 214 Ala. 391, 108 So. 11; Beggs v. State, 55 Ala. 108."

After considering the findings of the compensation board and the examination of the various acts of assembly, including the Act of 1939, we are of the opinion

that the common-law marriage as entered into between claimant and her decedent husband was a valid marriage, and that since her husband died as the result of an accident suffered in his employment, she and the child born as the result of this union, are entitled to the award as handed down by the compensation board. The appeal is dismissed.