## Cordora, etc., v. Cordora

*Leon H. Fox*, for petitioner.

KNIGHT, P. J., September 20, 1946.—This is a petition for the annulment of an allegedly void marriage. At the time the matter was submitted to the court, together with the report of the master, who recommended that a decree of annulment be entered, we entertained some doubt that a proper case for annulment

had been presented, and, in order that counsel for petitioner might present his views, and the various problems involved might be fully considered by the court en banc, we ordered the matter on the argument list. Counsel argued the matter, and now having filed his brief, the case is pending for decision.

The facts are not in dispute (petitioner having been the only witness), and we shall state them rather fully.

The parties had known each other for a period of several months prior to July 31, 1944. After their acquaintance, they had a number of "dates", and in June they discussed marriage, and decided they would be married the following month, without fixing a definite date.

On Monday, July 31, 1944, petitioner, who resides in Norristown, met respondent by appointment at the latter's home in Camden, N. J. A Mr. and Mrs. Foster were present and, after some conversation, in response to a question from respondent, Mr. Foster stated that he thought he could get some one in Berlin, N. J., to marry the parties. The four then took a cab to Berlin, where a justice of the peace refused to perform a ceremony, because of the necessity of waiting three days for a license.

Then, at the suggestion of the cab driver, the party drove to the home of Louis N. Condo, a New Jersey recorder, who was not at home. Condo's sister volunteered to take them to Dumbarton, N. J., five miles distant from Berlin, where petitioner and respondent signed a marriage license application. Condo's sister then directed the party to the home where Condo was visiting, near Fifty-third and Arch Streets, Philadelphia. Condo came out to the cab and after exhibiting some reluctance finally agreed to "take a chance", and after having the parties raise their right hands, read to them from a book he took from his pocket. This was presumably a formal civil marriage ceremony.

Respondent paid Condo $15 for his services, and then petitioner was driven to the Philadelphia and Western Railway Station, at Sixty-ninth and Market Streets, where she took a car home.

The next day, over the telephone, petitioner told respondent "it was all a mistake", having decided that she "should not have been married". She requested respondent to inform Condo she was not going to go through with the marriage.

There was introduced in evidence at the hearing before the master a paper over Condo's signature, certifying that he had united these parties in marriage on August 17, 1944, at Waterford, Camden County, New Jersey. This document is purportedly signed by Mr. and Mrs. Foster as witnesses.

The parties never lived together as man and wife, and sexual intercourse never took place between them.

We have given this case a great deal of consideration, especially in view of the predicament into which youthful petitioner was led. At the time we ordered the case on the argument list, we expressed ourselves as in agreement with the dictum of Judge Keller in Fisher v. Sweet & McCain et al., 154 Pa. Superior Ct. 216 (1943). That dictum, pronounced after an extended discussion of common-law marriage and marriage license statutes, was to the effect that thereafter, before a valid ceremonial or common-law marriage could be entered into, a license must be obtained pursuant to the existing marriage license statutes, including the Act of May 17, 1939, P. L. 148 (since repealed and supplied by the Act of May 16, 1945, P. L. 577).

That dictum has been the subject of wide discussion in the legal profession, and has aroused some judicial comment, particularly because it is distinctly and expressly pointed out that the point purporting to be ruled upon was not actually raised or involved in the case before the court.

Judge Keller noted the lower court decisions to the effect that a license was not necessary for a common-law marriage and the Act of June 23, 1885, P. L. 146, which contains the prohibition that "no person, within this Commonwealth, shall be joined in marriage, until a license shall be obtained for that purpose", and also provided for the issuance of certificates by officials solemnizing marriages, and for certificates evidencing that the parties had united themselves in marriage.

The Superior Court took the position that that act, and its several amendments, had for its object the keeping of true and correct records of all marriages within the Commonwealth.

As to the Act of May 17, 1939, P. L. 148, this is stated to be "clearly a public health measure designed to assist in the eradication of syphilis, and to prevent the communication of syphilis by a diseased spouse to the other, who was free from it, and to prevent the birth of children with syphilitic weaknesses or deformities".

The Superior Court opinion concludes that the legislature never intended that such an important hygienic statute could be circumvented by a common-law marriage, and ruled that thereafter a valid common-law marriage could not be entered into without complying with the Act of 1939.

Since our earlier opinion in this case, we have reconsidered this dictum, and now express ourselves as being of the opinion that we are not bound thereby.

In the first place, it is but dictum, admittedly on a point not raised or involved in the case before the court; secondly, if the Act of 1939 is to have the effect contended for by the Superior Court, it would be subject to attack on the constitutional ground that the title is defective, for no notice is given therein, nor, indeed, in the act itself, that common-law marriages are intended to be affected by its provisions; thirdly, while

the Act of 1939 may be primarily a public health measure, nevertheless, in accordance with many decisions of the lower and appellate courts, in regard to earlier marriage license acts, we believe its provisions to be directory rather than mandatory, since it contains no express provision making marriages void if the statute is not complied with.

In the case of Sahutsky v. E. G. Budd Mfg. Co., 55 D. & C. 466 (1945), in a thoughtful opinion, containing an exhaustive review of the authorities, the court held that none of the various marriage license acts, including the Act of 1939, showed any intention to affect or abolish the "well recognized institution" of common-law marriage. The court said (p. 470):

"It does not state that the marriage is invalid if performed contrary to the provisions of the statute. The courts of this Commonwealth have held on many occasions that marriage license acts are directory only and not mandatory unless they express words of nullity. In Hornbake v. Hornbake, 72 Pa. Superior Ct. 605, 607, Williams, J., stated that while the failure of the parties to comply with such acts (providing for the procuring first of a license to wed) may lay them open to prosecution or fine, the marriage relation is not voided thereby. See also Rodebaugh v. Sanks, 2 Watts 9; Helffenstein v. Thomas, 5 Rawle 208. The legislature, if it had so intended, could have clearly and emphatically regulated common-law marriages so as to first provide for a license to wed based upon a medical examination. It is our opinion that since the legislature failed to provide for a proper method of entering into a common-law marriage, that the courts cannot legislate this question. All civic minded people are in favor of any legislation which will properly suppress the spread of the dread disease, syphilis, and we would welcome any legislation which would defi-

nitely tend to suppress it. The courts may by dictum point out the way to the legislature, but the courts themselves cannot legislate."

Another dissent from the Superior Court dictum is found in Kolva v. Kolva, 57 Dauph. 200 (1945), where the court says (p. 201):

"Commonlaw marriages have consistently been recognized by the Courts of this Commonwealth, and we know of no act of the Legislature or decision of the Appellate Courts which invalidates them, including the Act of May 17, 1939, P. L. 148, and the decision in Fisher vs. Sweet & McClain, 154 Pa. Super. 216 (1944), relied upon by the libellant."

See also Pendel, "Common Law Marriages in Pennsylvania", 49 Dick. L. Rev. 94 (1945); but see note, 18 Temple L. Q. 264 (1944).

Another question that has been provocative of thought is whether a valid common-law marriage can arise merely when the formal civil marriage is invalid.

We have been unable to discover any case authority in this State. In 38 C. J. 1320, §95, it is said:

"Where parties in good faith go through a form of ceremony, believing it to be a valid marriage, although in fact the solemnization was not in the form directed by the statute, their clearly evidenced expression of assent to the contract will, if acted upon, constitute a valid common-law marriage."

It seems to us that the fact that the New Jersey police recorder had absolutely no authority to perform this ceremony does not prevent the transaction from being a common-law marriage. Certainly the contract was evidenced by words in the present tense, uttered with a view to establish the present relation of husband and wife. Even when a properly authorized official performs a ceremony, he does not actually marry the parties, who take each other as husband and wife, but

merely sees to it that the ceremony takes place in the customary form.

We have previously pointed out that a common-law marriage can exist even though not followed by co-habitation. Once the contract is proved by satisfactory evidence, the element of cohabitation is not legally significant so far as the validity of the marriage is concerned.

In Gerson v. Oil City Trust Co., 28 Dist. R. 853, 857, it is said:

"Cohabitation and reputation of marriage are but the natural sequence of a marriage. They are not in any sense requisites of a marriage."

To the same effect is Richard v. Brehm, 73 Pa. 140 (1873).

Having concluded that a valid common-law marriage took place between these parties on July 31, 1944, it becomes unnecessary to give lengthy consideration to the legal effect of the purported marriage certificate showing a marriage to have been performed on August 17, 1944, in New Jersey.

The falsity of the certificate has been overwhelmingly demonstrated, so as to deprive it of any presumption that its contents are prima facie true. In any event, if the certificate were correct, the parties would have been bound together by a ceremonial marriage, as is conceded by counsel.

Because of the unfortunate predicament in which petitioner finds herself, we have been sympathetic to her cause. However, we find we cannot do otherwise than reluctantly dismiss the petition.

And now, September 20, 1946, the petition is dismissed.

---

NOTE.—See opinion of the Superior Court filed October 1, 1946, in Buradus v. General Cement Products Co. et al., 159 Pa. Superior Ct. 501.