## Keely Application

*George Philip Stahl, Jr.*, for appellant.

SHOYER, J., August 10, 1966.—This is an appeal under section 9 of the Marriage Law of August 22, 1953, P. L. 1344, 48 PS §1-9, by Walter Preston Keely, Jr., the minor male applicant, from the refusal of the clerk of this orphans' court to issue a license without the written consent of the minor's father.

At the hearing in open court, held before me on August 3, 1966, Mr. Costigan, assistant clerk of the court, appeared and produced the marriage application, which was made on July 19, 1966, by the parties, both of whom are minors. He stated that on July 20, 1966, he sent a letter by certified mail and another by regular mail to the father of the male applicant advising him of this hearing and that if he had any objection to the issuance of the license, he should appear and voice his objection. Although the notice was timely delivered, Walter's father did not appear. The female applicant, a minor, was born September 2, 1946, and her father appeared before the clerk and gave his consent to the

marriage of his daughter, a Catholic, to the male applicant, who is a Protestant.

The male applicant was born December 1, 1945, and although he will attain his majority in less than four months, his father has refused to consent to the marriage. Because the parties plan to be married in a Roman Catholic church, the father apparently believes that Walter is converting to Catholicism. Walter testified that he has no such intention.

The testimony establishes that applicants have known each other for about two years, have visited each other's homes, and they have been engaged since last Christmas. At that time, the father of the male applicant helped his son select and personally financed the purchase of the engagement ring which applicant gave his intended bride. The loan has since been paid in full by Walter.

The male applicant graduated from Valley Forge Military Academy on June 4, 1966, and forthwith was commissioned a second lieutenant in the United States Army. He immediately obtained employment with a local manufacturer of paper products at a salary of approximately $100 a week. He lived at home with his parents until July 13, 1966, and paid $20 to $30 each week as board to his father. The parties intended to be married on October 20, 1966, but Walter has been informed that he will be ordered to active military duty in September, and they have, therefore, advanced their wedding to August 13 at the Catholic church.

On July 13, 1966, when the father first learned of his son's plans for a Catholic ceremony, he packed the son's clothes and told him to take them out and not to come home or get in touch with him again. The male applicant has not lived with his parents since then, and his parents have made no demands upon him for money. He does not contemplate asking them for any assistance, financial or otherwise.

The Marriage Law of August 22, 1953, P. L. 1344, sec. 5, 48 PS §1-5, directs that no marriage license be issued without the consent of a minor's "parent or guardian". The prior statute, the Act of June 23, 1885, P. L. 145, as amended by Act of May 28, 1915, P. L. 636, contained a similar requirement as to consent by the "parent or guardian".

1 Freedman, Law of Marriage and Divorce in Pennsylvania, §31, p. 71, points out that a number of cases hold that the orphans' court has the power to overrule the refusal of a parent to consent to the issuance of a marriage license where the female applicant is pregnant and the marriage is decreed in order to legitimatize the expected child: citing In re Minor's Application for Marriage License, 65 D. & C. 337 (1948); In re Minor's Application for Marriage License, 59 D. & C. 355 (1947).

In the earlier of the two cases just cited, 59 D. & C. 355, Judge Ladner, speaking for this court in refusing a license in the absence of the father's consent to the issuance of the license to his daughter, a minor, stated, pages 356-57:

"There is no showing that the father ever neglected his duty to support, maintain and educate his minor daughter, nor that he ever relinquished his custody and control over her; nor has she ever been emancipated.

"It has been the practice of the clerk for many years under the rules regulating the conduct of the marriage license office, promulgated by this court, to accept the consent of the father alone unless he has deserted his family, or separated himself from them and failed to support his children, or his whereabouts is unknown.

"Under the settled law of Pennsylvania he is entitled to his minor child's services and even the earnings, unless he has relinquished that right, or the child has become emancipated: [citing cases]".

In the instant matter, the father has barred the male applicant from his home and has given up his right to his son's earnings during the remainder of his minority. I find as a fact that Walter Preston Keely, Jr., the male applicant, has been fully emancipated.

The views of our court as to the proper construction of the former marriage law were set forth in a unanimous opinion by our late colleague, Judge Hunter, as follows, 65 D. & C. 337, supra, at page 340:

"The Act of 1885 suggests no exception to the requirement of consent to marriage by a parent or guardian, like, for example, the exception in the Adoption Act eliminating consent where a parent has abandoned a child. In Philadelphia practice, and no doubt elsewhere, it is assumed that such an exception exists, and many marriages are based upon the consent of the other parent or guardian".

The hearing judge fully endorses this broad expression of the court's power and authority. The right of appeal given an applicant by section 9 of the Marriage Law from the refusal of the clerk to issue the license, in compliance with section 5(c), supra, would otherwise be meaningless. Furthermore, the statutory mandate in section 9, viz: "The finding of the court that a license ought to issue or ought not to issue shall be final, and the clerk of the orphans' court shall act in accordance therewith", must contemplate exercise of the court's discretion whenever necessary. To tie the hands of the court by rigid adherence to only those powers clearly expressed in the Marriage Law, and no others, would be inconsistent with the legislative grant to the orphans' court of "all legal and equitable powers required for or incidental to the exercise of its jurisdiction" in section 304 of the Orphans' Court Act of August 10, 1951, P. L. 1163, 20 PS §2080.304. I am familiar with the holding in King License, 10 D. & C. 2d 533, 7 Fiduc. Rep. 441 (1957), by President Judge

Bowman, and in Gilbert Marriage License, 6 D. & C. 2d 414, 5 Fiduc. Rep. 582 (1956), by President Judge Williams. The opinions of these two learned jurists are always entitled to respect. Insofar as the facts before them are analogous to the present case, however, I disagree with their rulings and will not follow them.

There are present here some additional circumstances which I regard as impelling. The officers of the United States Army deem this young man sufficiently mature to lead others in time of war, i. e., in the present Viet Nam conflict. Our government has recorded this confidence in him by granting him a commission as a second lieutenant. His appearance on the witness stand fully justifies this expression of confidence. In testifying he spoke clearly, frankly and convincingly. While evidencing strong emotion, which he kept under restraint, his earnestness and sincerity were readily apparent. With his call into active service so imminent, it would be ironical to hold that he lacked the maturity to take unto himself a wife. His entry upon active duty automatically empowers him to make a valid will, even though he were but 18 years of age: Wills Act of April 24, 1947, P. L. 89, sec. 1(b), 20 PS §180.1(b).

The father's voluntary aid in the purchase of the engagement ring might well be deemed an estoppel to any objection now raised. Actually, he has voiced no objection to this court. So far as the record shows, the only reason advanced in explanation of the refusal of the father to consent in writing springs from the undue and unwarranted significance which he has apparently attached to his son's marriage ceremony taking place in a Catholic church. In Rodebaugh v. Sanks, 2 Watts 9 (1833), our Supreme Court, in an opinion by Chief Justice Gibson, held that marriage laws are "but directory", and that a father's consent given verbally is sufficient, although not reduced to writing before the marriage. The statute then before the court was penal,

232

but a like construction of the present law is rational, reasonable, and in accord with sound public policy.

The clerk is accordingly directed to appoint a guardian for the male applicant, pro hac vice, in order that he may give his consent to the issuance of the marriage license.