[PHILADELPHIA, APRIL 13, 1835.]

## HELFFENSTEIN *against* THOMAS.

### IN ERROR.

The acts of assembly of 1700 and 1729, to prevent clandestine marriages, are not obsolete in their provisions for publication of banns.

In an action against a clergyman to recover the penalty given by the latter act, the burthen of proof lies on the plaintiff to show that there was no publication of banns.

The action may be sustained although the minor was not dependent on his parent for support, but lived away from his parent and supported himself.

The law implies injury to the parent without proof of actual damage.

THIS was a writ of error to the District Court for the city and county of Philadelphia.

It was an action of debt brought by *Thomas* against the reverend *Samuel Helffenstein*, a minister of the German Reformed Church, to recover the penalty of fifty pounds given by the act of 1729, for marrying his infant son without publication of banns.

The court charged the jury that so much of the acts of assembly of 1700 and 1729, as requires the publication of banns is not obsolete: that they ought to be satisfied from the evidence that the banns were not published before they found for the plaintiff, but that this was a negative which in the absence of all evidence of an affirmative character might be presumed: that it was not material that the minor was dependent for support on his parent: that he would be liable although the minor was not so dependent; and although he lived away from his father and supported himself, if in other respects he was liable: that they might find for the defendant if they believed the plaintiff was not grieved by the marriage, but that the father might be presumed to be grieved in the absence of evidence to the contrary.

The court also charged, although no exception was taken thereto, that if the minor were accompanied by friends or witnesses of the ceremony of marriage, that notwithstanding the presence of the witnesses, the defendant would be liable if otherwise liable.

To this charge the defendant excepted, and the cause was now argued by

*V. L. Bradford* for the plaintiff in error, who contended that the acts of assembly of 1700 and 1729, requiring publication of banns were obsolete and inapplicable to the present times. Marriage is only a civil contract which may be inferred from cohabitation or acknowledgment of the parties. No formal solemnization of it is required. 4 *Johns.* 51. The burthen of proof lay upon the plaintiff to show that there was no publication of banns.

(Helffenstein *v.* Thomas.)

The general rule is, that a party is not compelled to prove a negative: but the exception is as well settled as the rule, that where the negative involves a criminal omission by the party, and consequently where the law by virtue of its general principle presumes his innocence, the affirmative of the fact is also presumed. 1 *Stark. Ev.* 378. 18 *Johns.* 347. And here the undertaking to marry without the publication of banns is a penal act. He argued further, that it was material in order for the parent to recover, that the minor should be dependent on him for support. If, as in the case at bar, he lived away from the parent and maintained himself, there was no loss of service : and actual loss is the ground of an action by a parent. He cannot recover in respect of the mere parental right, or for the injury merely to his parental feelings. During the continuance of the military tenures, an action lay for marrying his son and heir without his consent, because he lost the value of the marriage. Actual loss is therefore the ground of a civil action by the parent. 3 *Bla. Com.* 140 ; and though the act of assembly gives the parent a remedy against the person joining in marriage, it does not dispense with what the common law makes essential to the existence of the action. Besides it ought to have been affirmatively proved and could not be presumed that the father was grieved, or received any injury.

*Grinnell,* contra, was directed to confine himself to the second specification of error.

He contended that the difficulty of proving in this case a negative was so great as to make it impossible for the plaintiff to prove it. In general a party is not required to prove a negative, but it lies on the other side to prove the affirmative of what he insists. Matter in defence of the action need not be stated but ought to be shown by the opposite party. 1 *Chitty's Plead.* 227. *Com. Dig. Plead. c.* 81. The averment " without publication of banns" in the declaration, gives notice to the defendant to be prepared to show that there was such a publication, and is therefore for his benefit. The defendant pleaded the general issue. If however he could have been required to plead specially, he must have averred and proved the publication of banns. The omission of the plea cannot make any difference. In actions for penalties on the game laws, the want of the several qualifications must be averred in the narr., and yet the plaintiff is not required to prove the negative averment. 1 *Stark. Ev.* 376. 2 *Id.* 626. Where a party before a justice admits the trading, he must prove that he had license. 1 *Stark. Ev.* 376. *Rex v. Smith,* 3 *Burr.* 1475.

Nor does this case come within the exception urged on the other side where the negative involves a *criminal* omission by the party. In the case of Lord *Halifax* and the East India Company referred to in 1 *Stark. Ev.* 378, the persons concerned in putting the combustible matter on board the ship were criminally liable and punishable for a misdemeanor at the least. In the present case a criminal

(Helffenstein *v.* Thomas.)

omission cannot be pretended—as there is no law requiring or compelling the defendant to solemnize a marriage. So in *Monk* and *Butler*, 1 *Rol. Rep.* 83, where the court put the defendant to prove that the plaintiff had not read the thirty-nine articles, although a negative. It is apprehended that in all cases of exception to the general rule that a party is not to be called to prove a negative, there is a criminal omission, or an omission by an officer of an act to be done by himself and not by others (as the publication of banns) who is supposed to do his duty until the contrary be proved. Here there is nothing official in the clerical character of the defendant, as marriage being a civil contract, it need not be performed before a clergyman or a magistrate.

The plaintiff having proved the fact of the marriage, it was *prima facie* sufficient to throw the burthen on the defendant to show that he was qualified. The court told the jury that before they found for the plaintiff, they must be satisfied from the evidence that the banns of marriage had never been published. In this surely there is nothing illegal or of which the defendant had cause to complain. The jury found for the plaintiff, thus, it is supposed, declaring that they were satisfied from the evidence that there had not been a publication of banns. If they were wrong the defendant might have had a remedy in the court below.

The opinion of the court was delivered by

GIBSON, C. J.—The notion that the acts of 1700, and 1729–30, are obsolete in their provisions for publication of banns, is a novel one. These provisions were not introduced to serve a particular time or occasion; and they are consequently the law of our day, though capable, as held in *Radebaugh* v. *Sanks*, of being satisfied by less than the certificate of consent appointed as the satutory substitute for publication. It was held in that case, that the penalty is not incurred by performance of the marriage ceremony without publication or certificate, where the acts and declarations of the plaintiff have been such as may have led the defendant to believe that the marriage was desired by him. But where there was not actual consent, or such indications of it as would make an averment of dissent a fraud, which it is not the policy of the statute to encourage, it never has been doubted that its requirements must have been complied with in order to save the penalty, though not to legalize the marriage.

The next point however, was erroneously ruled by charging that, in the absence of proof to the contrary, the jury might presume that the banns were not published according to the statute. The general rule undoubtedly is, to dispense with proof of a negative, the burthen being cast on him who asserts the affirmative. But to this there are two undoubted exceptions; the first where the truth of the alle-

gation is peculiarly within the knowledge of him who denies—and the second, which seems to be the case at the bar, where the denial imputes a criminal omission by the party to be charged, and there the legal presumption of innocence stands for proof till it is rebutted. The authorities are collected in 1 *Starkie, Ev.* 363; to which *Senser* v. *Bower*, 1 *Penn. R.* 450, may be added. And the presumption operates with peculiar propriety, where the negative is a constituent part of the offence, instead of its opposite being a ground of exemption, as it preserves the maxim, that the accused is to be held innocent till proved guilty, from being inverted. The case of a penal action for sporting without the requisite qualification, though apparently irreconcileable to the spirit of these exceptions, is not so in fact, because the qualification to keep a gun, operating by way of exception out of the general implication of criminality, from an act which, if done without a personal license, would be unlawful, must be shown by the accused as a special justification, though it would be otherwise if the want of it, as here, were a constituent part of the offence. The distinction implied by these instances is undoubtedly a subtile one, and it is not easy to define its properties with certainty or precision; but they are all resolvable into this: where the prohibition is general with an exception in favour of *persons*, a party who claims the benefit of the exception must bring himself within it; but where the prohibition is special in reference to the *circumstances*, the party alleging criminality must show the existence of those circumstances, even of a negative quality, on which alone it can depend. But though the burthen of negative proof rests on the plaintiff, in the case at the bar; want of publication may be shown by slight circumstances, such as suddenness and privacy in the concoction of the marriage.

The second and third points involve the supposed necessity of service and dependence upon the plaintiff, as the foundation of the action. Were this penalty, like damages for seduction, demandable but on the relation of master and servant, there might be colour for this part of the defence. But even the action on the case has been sustained, where the daughter was in the employment of another, the father having retained the right to control her person. The action here, however, is founded on the relation of parent and child, which may survive a state of service and dependence; for the remission of a father's right to the earnings of his child, though undoubtedly binding, is not an abandonment of his parental rights or duties in respect to marriage, or settlement of the child in life, and an obstruction of these is the very injury in requital of which the penalty is provided: as was recently determined in *Donaghue* v. *Dougherty, Supra* 124.

In that case, too, it was determined that the law implies injury to the parent, without proof of actual damage; and that where the

(Helffenstein *v.* Thomas.)

requisitions of the statute have not been complied with, the officiating party proceeds at his peril.

Judgment reversed, and a *venire de novo* awarded.