## Ingram, Appellant, v. Ingram.

*Divorce—Fraud—Evidence—Insufficiency.*

A libel in divorce on the ground of fraud consisting in premarital pregnancy without the knowledge of the libellant is properly dismissed where the libellant fails to establish the truth of the alleged facts by the clear weight of evidence.

Argued April 29, 1927. Appeal No. 159, April T., 1927, by libellant from decree of C. P.. Allegheny County, July T., 1926, No. 794, in the case of Joseph W. Ingram, Appellant, v. Elizabeth P. Ingram. Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Libel in divorce. Before GRAY, J.

The facts are stated in the opinion of the Superior Court.

Libel dismissed at the cost of libellant. Libellant appealed.

*Error assigned* was the decree of the Court.

*G. W. Williams,* for appellant.

*Albert Barnes Smith,* for appellee.

OPINION BY TREXLER, J., July 8, 1927:

This is an action of divorce. The parties were married on the 10th of April, 1926. The petition alleges that the marriage was never consummated and prays that it be declared void and a decree of absolute divorce granted for the reason that the respondent, prior to the ceremony had illicit carnal intercourse with a man other than the libellant and as a result thereof, was, at the time of the marriage, pregnant; all of which was unknown to the libellant.

The parties had been friends for years and the libellant had been assiduously courting the respondent for a year and a half and admits that each party had the right to expect that a marriage would ensue, there being an understanding to that effect.

According to his story, she urged him to marry her because she was being treated meanly at home and they agreed to go to West Virginia the next day, but for some reason did not complete the journey. On the following Saturday, at her request, they were married in the City of Pittsburgh. His family was opposed to the marriage and tried to persuade him to delay the ceremony at least until the following summer giving as a reason that libellant wished to join a prominent secret order and the marriage would prevent him from doing so. After the marriage, libellant told his mother and sister that respondent had advised him that she was "irregular" and at their suggestion, respondent went to their family physician with libellant's sister and father and there was advised that she had been three or four months pregnant. This created a great scene and respondent was urged to tell who was responsible for her condition. She first denied that she had anything to do with anyone, nobody was responsible, but finally stated that her younger brother was. Libellant's father then took her to her father's home and told them of the respondent's condition and she again stated that her brother was responsible for it. This declaration of the respondent is the one fact in the case which is disturbing and renders the decision somewhat difficult. That respondent made such a declaration, there is no question.

Her testimony is to the effect that she and the libellant were friends and lovers and had been engaged since November, 1925; libellant was in company with her at least three or four evenings every week; he had intercourse with her about two weeks before Christmas,

1925, and again in February, 1926; she never had anything to do with any other man and had no intercourse with her brother and that the reason the marriage was hurried up was because she told the libellant of her condition.

We do not think the admission of the respondent settles the matter. We have examined the testimony carefully and her declaration in the doctor's office evidently was made under great excitement. As stated before, when she was met with the statement that she was pregnant, she declared that she had intercourse with "nobody." She said she liked Joe Ingram. She was again urged, "It surely is somebody. Why don't you tell us the truth?" "No, It was nobody," but finally as one word led to another, she said "It was my brother, Bill." She was evidently distraught and was urged to such an extent that she felt compelled to name someone and in her desperation, mentioned her brother. She alleges that she made the statement in the excitement of the moment in order to protect her husband. When she was taken to her father's house by libellant's father, she repeated the statement and he says acted like a drunken person and her eyes were glossy. She became very sick and in that condition signed a statement that her husband was the father of her unborn child and soon after had a miscarriage. At the hearing of the divorce in this case, she absolutely denied ever having any sexual relation with her brother and the brother denied it also.

The lower court has this comment to make: "The libellant's conduct on the witness stand was not prepossessing. He was apparently under the influence of his parents and his testimony indicates that he and his family had a motive for concealing the fact that he had gotten this young lady into the condition which compelled him to marry her. He tried to make it appear that he simply married the girl out of pity for her

and that she made all the advances necessary to secure the marriage. The circumstances indicate this to be wholly improbable and so unnatural and unreasonable, and such conduct would be so unmanly that it is not credible. On the other hand, the respondent told a frank story which bore the marks of truth upon it, and her brother appeared like an honest, truthful young man, of whom it would be against reason to expect the unnatural action with which he was charged in a moment of great excitement.''

It is the duty of the libellant to produce satisfactory proof of his right to a divorce. A careful consideration of the case leads us to the conclusion that libellant has failed to prove his case by the clear weight of the evidence.

The order of the lower court refusing the divorce and dismissing the libel, is affirmed. The appellant is to pay the costs.