## Shouey v. Shouey

*Bell & Bell,* for libellant; no appearance for respondent.

COPELAND, P. J., May 18, 1931.—This is an action brought by the petitioner against the respondent to annul the marriage contract entered into on January 25, 1930, and is founded upon a petition or libel for annulment filed February 25, 1930, which in part reads as follows:

"That petitioner has been a native-born resident of said county during her entire lifetime, that she was aged sixteen years on May 30, 1929.

"That on January 25, 1930, being a minor under the age of twenty-one years and without the consent of her parents, or the consent of anyone capable of giving consent, she having no guardian, she was married to Elra Shouey, a resident of the City of Meadville, Pa., by George Bennett, a justice of the peace in the Town of Ripley in the County of .......... and the State of New York, the said Elra Shouey being at that date also a minor of the age of twenty years.

"That at the time of said alleged marriage petitioner was a student in the State Normal School at Edenboro, Erie County, Pa., and the alleged marriage contract was entered into without the knowledge and consent of her father, Thomas Boerio, and her mother, Candida Boerio, party hereto, and they are still unwilling to regard the same as a valid marriage contract or ratify or confirm the same by giving consent thereto.

"That petitioner is not now living or cohabiting with the said Elra Shouey, she having returned to the home of her parents in Hempfield Township, said county, and the said Elra Shouey resides at Grove City, Mercer County, Pa.

"Your petitioner, therefore, showing that she has been a citizen of Pennsylvania for more than one whole year previous to filing this her libel, prays that a subpœna may issue in due form of law directed to the said Elra Shouey, commanding him to appear in this honorable court and answer this complaint, and also that a decree of this court may be made for the annulment of the said alleged marriage and for divorcing her from the bonds of matrimony as if said alleged marriage had never been contracted, and she will pray," etc.

Upon the filing of this libel on February 25, 1930, a subpœna was awarded returnable to the first Monday of April, 1930, which was returned by Ray B. Johnston, sheriff, n. e. i. On May 6, 1930, an alias subpœna was duly awarded returnable to the second Monday of June, 1930, which was returned May 13, 1930, served on the respondent personally and by giving him a true and attested copy of the original subpœna.

On July 12, 1930, on motion of counsel for the petitioner, R. D. Laird, Esq., was appointed a master, and on July 25, 1930, J. Arthur Thomas, prothonotary, was appointed guardian ad litem of Elra Shouey, respondent.

The record was amended by having the respondent's name correctly docketed as Elra Shouey instead of Elra Shoney, the reason being that the prothonotary misinterpreted the handwriting of counsel for petitioner in that he took a "u" for an "n" and docketed the case against Elra Shoney instead of Elra Shouey, and by reason of this misinterpretation of the handwriting of counsel for petitioner both the original and alias subpœna went out in the name of Elra Shoney. It, however, appears from the record in this case that the respondent was personally served notwithstanding the fact that his name was mistakenly spelled, and there is no question about the fact that he was properly served, as he corresponded with the petitioner or libellant about having been served with notice of her application for an annulment of the marriage. Neither of the subpœna, however, was served on the guardian ad litem of Elra Shouey and no notice was given him of the date set by the master for the hearing.

A hearing was duly fixed by the master for Saturday, July 26, 1930, at 10 o'clock A. M. The record shows that Albert H. Bell, Esq., attorney for the petitioner, appeared and that the petitioner appeared personally. There was no appearance for respondent either in person or by counsel. Testimony was taken and subsequently transcribed into longhand, and from the record in this case the master made up his report, together with findings of fact and an

opinion, in which he recommended that the prayer of the petitioner be denied and petition be dismissed for want of authority of the court to enter such a decree as prayed for in the petition or libel. However, before filing this report on February 20, 1931, the master, by United States mail, gave notice to the parties interested or their counsel that his report was completed and would be filed in the Court of Common Pleas of Westmoreland County on March 2, 1931.

Before the filing of the report on February 23, 1931, the following exceptions were filed to the master's report:

"And now comes Mrs. Candida Boerio, mother, on behalf of the parents of Felicia Shoney, alleged wife, and reserving the right to ask the court to refer the proceedings back to the learned master to bring the respondent into court to be heard if he so desires, in the event the court shall find that the learned master erred in refusing to recommend the decree prayed for and on the merits should find that a decree should be entered in favor of the petitioner, files the following exceptions to the master's report:

"1. The master erred in not finding that the fraud testified to was sufficient to sustain a decree for annulment of the marriage.

"2. In not finding that the alleged marriage consummated by the parties in their minority without the knowledge or consent of the parents or guardian of Felicia Shoney and without their subsequent ratification was a fraud upon the rights of said parents sufficient to sustain the decree prayed for.

"3. In not recommending the decree prayed for in the petition."

These exceptions on February 24, 1931, were overruled and dismissed by the master, who filed his report on March 2, 1931. These exceptions were renewed before the court and it now becomes the duty of the court to dispose of them.

The gravamen of these exceptions, as we gather from them and from the argument of counsel when the case came on to be heard on the exceptions, is that the petitioner or libellant was sixteen years of age and the respondent twenty years of age at the time they procured their marriage license and were married, and that, therefore, there was a fraud perpetrated, and by reason thereof the marriage contract should now be annulled.

The Act of May 8, 1854, P. L. 644, provides that, in addition to the cause provided by law, it shall be lawful for the court of common pleas of this Commonwealth to grant divorce in the following cases: "Where an alleged marriage was procured by fraud, force or coercion and has not subsequently been confirmed by the acts of the injured parties."

To authorize a divorce under this act on the ground of fraud it is necessary that the statement relied on should be untrue in fact and that the libellant should have been deceived by it, and where threats are relied upon to establish coercion, they must be such threats against the life or to do bodily harm as would overpower the judgment and coerce the will; there must be such a mental condition as a result of the threats that the libellant did not and could not in reality consent to the marriage: Todd v. Todd, 149 Pa. 60.

There is no evidence of fraud in procuring the marriage contract in this case to call for its rescission. Where the fraud concerns anything other than the essentials of a contract, there is no relief: Hoffman v. Hoffman, 30 Pa. 417.

The only fraud that appears in this case, if that be fraud, so far as the record and the evidence go, is that the libellant or petitioner and the respondent did not tell the parents of the libellant or petitioner that they intended to get married and the deception of the marriage license official in the State of New York that they were twenty-one years of age. Both agreed to run away and get married and both knew that neither was of age when they told the marriage license official in New York that they were. Therefore, so far as the

parties to this contract were concerned, in either of these events the one did not deceive the other. That is to say, neither was deceived by the other and no fraud was perpetrated or practiced by the other in entering into the marriage contract, and where that is not done there can be no annulment of the marriage contract. The very essence and vitals of fraud which would annul a marriage contract is that fraud must be practiced on the complaining party inducing her to enter into the contract, and where that does not appear, no matter what fraud was perpetrated on others in bringing about the marriage ceremony, there can be no annulment of a marriage contract.

In Greene v. Brandt, 13 D. & C. 712, quoting from pages 713 and 714, it is said:

"In the case at bar, complainant seeks to annul a marriage contract to which he was not a contracting party and which contract differs from the ordinary contract in that the Commonwealth is peculiarly concerned therewith. The marriage relationship is more than just a contract; it is a civil status, and once entered into can be dissolved only for the causes recognized by the state in its statutes. None of these causes is alleged in the present proceeding.

"The fraud set up in this case may in theory be the loss of wages to which the parent is entitled from said minor child or the fraud of misrepresenting her age.

"However, so far as we have been able to ascertain, there is no provision in the law of Pennsylvania for declaring a marriage void on the ground of the minority of the parties to the marriage. While the requirement of the law is that a minor shall not be granted a certificate to marry without the consent of the parent or guardian, the effect of the law is not to render a marriage void which is performed contrary to this requirement: Seibert v. Seibert, 3 D. & C. 142.

"It is true that no justice of the peace or minister may marry a minor without the consent of the parent, but that does not affect the validity of the marriage itself: Beelman v. Roush, 26 Pa. 509. The issuing of a license under such circumstances may be visited with the penalty provided by law, but the marriage is not thereby avoided. While a penalty is imposed upon one who violates the regulatory statute, nowhere in the act is it stated that such a marriage shall be void. In the absence of a positive statute declaring that all marriages not celebrated in the manner therein prescribed shall be void, any marriage regularly made according to the common law, without observing the statutory regulations, is a valid marriage: Meister v. Moore, 96 U. S. 76. It has become established in authority that a marriage good at the common law is good notwithstanding the existence of any statute on the subject, unless the statute contains express words of nullity: Biesecker's Estate, 7 Dist. R. 70. Acts which provide for the obtaining of licenses are directory and not a declaration of what shall constitute a legal marriage and what not. It does not follow that a marriage contracted in any other form is void: Rodebaugh v. Sanks, 2 Watts 9. Also, Helffenstein v. Thomas, 5 Rawle 209."

In Baker v. Baker, 84 Pa. Superior Ct. 544, quoting from page 545, it is said: "We think the term 'innocent or injured party' is to be taken in its common or general meaning, and refers to one who is free from blame or wrongdoing in the matter. A person who marries another knowing at the time that the latter has a husband or wife living, is not an 'innocent or injured party' within the meaning of the act, and while the law does not in such circumstances legalize the void marriage (Thomas v. Thomas, 124 Pa. 646; Heffner v. Heffner, 23 Pa. 104; Klaas v. Klaas, 14 Pa. Superior Ct. 550), it refuses its aid to one who, having knowingly contracted such a marriage, later seeks

a formal decree of nullification. In such case, it leaves the parties as it finds them."

In Seibert *v.* Seibert, 3 D. & C. 142, the second paragraph of the syllabus is as follows: "A divorce will not be granted under the Act of May 8, 1854, P. L. 644, because of fraud, force or coercion on the part of the respondent in bringing about the marriage, where nothing more is shown than that respondent wrongfully stated his wife's age when procuring the marriage license in another state, and that she acquiesced in such statement."

This syllabus is fully supported by the opinion of the learned judge in that case.

Another thing that we think fatal to this proceeding is that the guardian ad litem was not served with the subpœna or the alias subpœna and that no notice was given him as to the time of holding a hearing and the taking of evidence before the master. The guardian ad litem is not appointed merely for the purpose of making proceedings regular; he must do more. It is his duty to appear and supervise the defense of the minor: Crowthers *v.* Crowthers, 1 Wash. Co. Reps. 169; Ohlweiler *v.* Ohlweiler, 72 Pa. Superior Ct. 518. However, as suggested in the exceptions of counsel for petitioner or libellant, this matter could be cured by referring it back to the master and requiring the guardian ad litem to get into communication with the respondent and to prepare and supervise his defense. If this were the only thing in this proceeding that stood in the way of granting the prayer of the petition, we would do as counsel for libellant suggested, but, as we have tried to indicate, there seems to be no authority in Pennsylvania for annulling this marriage either by statute or judicial precedent.

What we have said here in this opinion is in a measure gilding the gold, as the learned master has fully, ably and exhaustively disposed of all the questions that arise in this case. We adopt his findings of fact and opinion as that of the court.

And now, to wit, May 18, 1931, after argument and after due and careful consideration, it is ordered, adjudged and decreed that all the exceptions to the master's report be and the same are hereby dismissed; that the prayer of the petition be denied and that the petition be dismissed, at the costs of the petitioner.                    From William S. Rial, Greensburg, Pa.