## Nice v. Nice

*Edward B. Duffy*, for plaintiff.

FORREST, J., January 30, 1950.—In this annulment action, husband-plaintiff complains that the marriage was procured by wife-defendant "by fraud in that defendant was, at the time of said marriage, pregnant by some other person other than plaintiff and that she concealed this fact from plaintiff". It was made to appear by plaintiff that these parties were married on July 24, 1948, and defendant was delivered of a child on August 3, 1948; that although he never had intercourse with her, defendant convinced him that he was the father of the child to be born as a result of some of his semen entering her uterus on January 31, 1948, after an orgasm during a "petting party"; that the parties have not cohabited together since the day before the birth of the child.

Plaintiff has brought this action, predicating his case upon the provisions of section 12 of The Divorce Law of May 2, 1929, P. L. 1237, as amended, 23 PS §12, the annulment section of the act, providing as follows:

"In all cases where a supposed or alleged marriage shall have been contracted, which is absolutely void by reason of one of the parties thereto having a spouse living at the time of the supposed or alleged marriage, or, if, for any other lawful reason, the said supposed or alleged marriage was absolutely void when contracted, such supposed or alleged marriage, may, upon the application of either party, be declared null and void, in accord with the principles and forms hereinafter prescribed for cases of divorce from the bonds of matrimony."

There seems to be no authority for annulment on the ground of fraud. The Divorce Law of 1929 specifies as one of the grounds on which a divorce may be obtained that the other spouse:

"(g) Fraud or coercion—Shall have procured the marriage by *fraud*, force, or coercion, and which has not been subsequently confirmed by the acts of the injured and innocent spouse;" (Italics supplied.)

In Freedman's Law of Marriage and Divorce in Pennsylvania, it is said on page 24:

"Fraud or duress, existing at the time of the marriage, destroys the reality of the consent of the parties, and hence taints it at its source. The modern policy of the law, however, is to refrain from invalidating marriages *ab initio* and to constitute the defect a cause for divorce rather than annulment. In this manner the past relationship between the parties is not rendered illegal and children born of the union are mercifully saved from the stain of illegitimacy. Accordingly, fraud or duress, or, in the language of the statute, 'fraud, force or coercion' are made grounds for divorce *a. v. m.* and this is the remedy which must be pursued."

Concerning the 1935 amendment to section 12 of The Divorce Law, Freedman in Law of Marriage and Divorce in Pennsylvania, states on page 856:

"The present law, therefore, includes within the grounds for *annulment* all marriages which are absolutely void, but does not embrace marriages which are merely voidable. Although the effect of this extension has not yet received judicial determination, it may be said to add to bigamous marriages, as ground for annulment, marriages contracted in jest, marriages void because of the incapacity of one of the parties due to insanity at the time of marriage or intoxication, or because the party is under seven years of age, or the marriage of a respondent, divorced for adultery, with the co-respondent, during the lifetime of the libellant and marriages contracted by mistake." (Italics supplied.)

Thus, it is seen that annulment is not the proper *statutory* remedy when the ground is fraud, and it is well established that there are no common-law causes for divorce. Cantor v. Cantor, 70 Pa. Superior Ct. 108, 111 (1918) states:

"The only causes for divorce in this State are specified by statute, and they cannot be expanded to meet causes that are not clearly embraced in the words used in the statute."

We could very well dismiss the complaint on this ground, but the ends of justice would not be met, for it might leave plaintiff under the impression that a divorce a. v. m. could be granted upon the merits of the case. But we feel that even though a divorce a. v. m. had been prayed for, the complaint would have to have been dismissed on its merits.

There are no cases cited which are analogous on their facts with the instant case, and none have been found after an extended research. We might again say that since plaintiff has failed to bring this case within the

established law, he has failed to make out a case (Cantor v. Cantor, supra) and the case should be dismissed. Although that is the real basis of our decision, we feel that the facts present such an unusual case and therefore, something more than a summary dismissal is demanded. There would be no difficulty in reaching a decision if the plaintiff had had connection with defendant prior to the marriage. The cases are legion that under such circumstances, having known of the pregnancy, he cannot now complain that he had been deceived as to the paternity of the child.

As early as 1858 in Hoffman v. Hoffman, 30 Pa. 417, the court said on page 420:

"The proof is that the respondent stated to some of the libellant's friends, not to him, that she was pregnant by him, which he alleges in his petition he did not know at the time was false, and by which he was induced to marry her."

The next case of any importance, and probably the one most frequently cited on a petition of this type, is Allen's Appeal, 99 Pa. 196 (1881), where the court said on page 201:

"The only practical result, therefore, of declaring the marriage absolutely void, ab initio, for simple antenuptial incontinence—whether in one instance or many —would be to render innocent children illegitimate. And if ante-nuptial incontinence be a sufficient ground of nullity as against the woman, it is not easy to see why it should not be so likewise against the man, and the consequences of such a doctrine it is not difficult to predict.

"Actual pregnancy at the time of the marriage presents an entirely different question. It introduces a different element. The marriage status of the parties is changed. The man is then necessarily put to the alternative of either publishing his wife's shame or submitting to have the child of a stranger, an alien to his

blood, introduced, recognized and educated as his own legitimate offspring. If a man, indeed, marries a woman knowing her to be pregnant, even though he may believe that he is the father, he cannot set up the fraud, if afterwards discovered; for no man would do such a thing unless conscious of having had himself previous connection with her; and though she may have falsely assured him that the child was his, if he chooses to rely on that assurance he must bear it as a misfortune."

It is true that this is obiter dicta, but the courts have followed it as a precedent up to the present time. In Santer v. Santer, 115 Pa. Superior Ct. 1, 5 (1934):

". . . libellant's assertion that he had sexual intercourse with respondent prior to their marriage effectually eliminated from the case any possibility of a decree upon the ground of fraud."

See also Sturgeon—Pennsylvania Law and Procedure in Divorce (3rd ed.), page 134:

"And, if libellant had intercourse with respondent before marriage he is generally refused a divorce on the ground that respondent concealed her pregnancy by another."

Also Peifer v. Peifer, 113 Pa. Superior Ct. 271, 273 (1934):

"If a man marries a woman, knowing her to be pregnant and believing that he is the father of the child, he cannot set up the fraud if afterwards discovered."

It may be in accordance with certain standards that the ends of justice might be furthered by granting a divorce under the circumstances such as we have here. However, this is not the rule by which we are governed. The test is whether the legislature has authorized a divorce under such facts.

No cases have been found where the divorce has been allowed where plaintiff knew of the pregnancy of de-

fendant prior to the marriage. As was said in Allen's Appeal, supra, page 200:

"The law makes no provision for the relief of a blind credulity."

It would be judicial legislation to grant a divorce under these circumstances.

And now, January 30, 1950, the exceptions to the master's report are overruled and the complaint is dismissed at the cost of plaintiff.