## Kogan v. Kogan

*Herman P. Weinberg*, for plaintiff.

*Joseph T. Coughlan*, for defendant.

ALEXANDER, J., March 14, 1963.—This action in divorce is before the court upon plaintiff husband's exceptions to the master's report which recommended that the complaint in divorce, a vinculo matrimonii, be dismissed.

The action was brought by plaintiff, Harry Kogan, against defendant, Anna Kogan, an incompetent, on the ground of fraud. Plaintiff alleged that defendant had fraudulently concealed from him the fact that she had been treated and hospitalized for mental illness within five years prior to the date of their marriage and that said concealment was willful and done with the intent to commit a fraud.

Plaintiff and defendant were married on June 4, 1939, in Philadelphia. Neither party had been previously married. Both are naturalized citizens of the United States, having come to this country as children from Russia where they were born. Plaintiff is 49 years of age and defendant is 50 years of age. Both parties have been residents of Pennsylvania for many years. One child, a boy, was born of the marriage in 1941. He is now an adult and resides with his father, the plaintiff.

The principal residence of the parties during some 11 years of cohabitation following their marriage was 1323 South Fourth Street, Philadelphia. They jointly owned and operated a grocery business at that loca-

tion from 1940 to 1949. In addition to helping plaintiff in the store, defendant was engaged with the duties of being a housewife and mother during the said period.

Beginning in 1949, defendant began to suffer with mental difficulties and on May 19, 1949, she was admitted to the Philadelphia General Hospital for a period of 50 days, at the end of which she was transferred to the Philadelphia Psychiatric Hospital until August 12, 1949. On August 25, 1949, after some two weeks at home, defendant was readmitted to the Philadelphia General Hospital and on September 9, 1949, she was sent to the Norristown State Hospital for a period of seven months. She was then sent home, where she remained for nearly one year until March 14, 1951, when she returned to Norristown State Hospital. She has been a patient at Norristown continuously since that date and is diagnosed as a chronic schizophrenic. A prefrontal lobotomy was performed upon defendant in 1953. At about the time of the sale of the parties' property, 1323 South Fourth Street, Philadelphia, in 1954, defendant was adjudged mentally incompetent by the Orphans' Court of Philadelphia and Liberty Real Estate and Trust Company of Philadelphia was appointed as her guardian.

The facts relating to the alleged ground for divorce are that on December 18, 1935, to May 29, 1936, defendant was a patient at Norristown State Hospital. She was then 23 years of age. During this first hospitalization, defendant was diagnosed as suffering from dementia praecox, catatonic type, which it was established would now be classified as schizophrenia, catatonic type.

Defendant was not institutionalized nor treated for mental disorder between 1936 and 1949, a period of 13 years. On May 29, 1937, a year after her release from Norristown State Hospital, she was designated as having been "discharged", which was explained as being an administrative procedure of that institution.

At the time of her release from Norristown State Hospital on May 29, 1936, defendant's condition was described as follows: "patient seems to have recovered, very bright and cheerful and cooperative, willing worker on the ward, very good judgment."

Thereafter, some two and one-half years later, in about January 1939, plaintiff and defendant met, courted and were married on June 4, 1939. Defendant's behavior, bearing and demeanor during the courtship were apparently fine and aroused no suspicion in plaintiff nor among his family that she had suffered from mental difficulties. Plaintiff never knew of defendant's history of mental illness until after she was stricken the second time in 1949. She told him nothing about her illness when he proposed to her nor when they obtained their marriage license in 1939.

Since defendant's confinement, plaintiff has visited his wife regularly. In recent years, his visitations have become less frequent which, of course, is fully understandable due to the circumstances of this unfortunate situation.

The sole issue presented for determination is whether defendant's concealment of her mental illness constituted fraud so as to render this marriage voidable under the Divorce Law of May 2, 1929, P. L. 1237, sec. 10, as amended, 23 PS §10 (g).

First, it must be noted that there was no active concealment of the prior mental illness by defendant. Plaintiff was never given cause to question defendant about such illness and defendant never volunteered the information to him. Thus, the nature of the concealment and the alleged fraud by defendant was passive, as opposed to a situation where one party to a contract actively misrepresents material facts concerning the contract to the other party in order to induce the other party to enter into the agreement. See Restatement of Contracts, §471.

Fraud as a ground for divorce has not been frequently litigated in Pennsylvania. The leading case is Allen's Appeal, 99 Pa. 196 (1881), in which a divorce decree in favor of plaintiff husband was sustained based upon proof that the appellant wife was pregnant by another man prior to her marriage to plaintiff, that she gave birth to a child seven months after the marriage date, that plaintiff was not the father of the child and that she concealed her said condition and premarital experience from the plaintiff. There was serious conflict in that case between the testimony of the parties, as summarized in the opinion; however, the court chose to base its affirmance upon the facts as contended by the husband and in accordance with the verdict of the jury.

There is serious doubt as to whether the proof in the Allen Appeal, supra, would meet the burden of proof of fraud as applied in subsequent cases: Kissell v. Kissell, 163 Pa. Superior Ct. 288 (1948) ; Peifer v. Peifer, 113 Pa. Superior Ct. 271 (1934) ; Ingram v. Ingram, 91 Pa. Superior Ct. 82 (1927). This is so particularly since defendant wife in Allen's Appeal, supra, testified that the plaintiff was the father of the child, plaintiff did not prove access by another male except by a previous admission of the defendant which defendant attempted to explain in a light favorable to her position at the trial and since the so-called "expert" opinion testimony of a mother of four children to establish that the child born of the defendant wife was not premature but was a "full term" baby, was admitted into evidence. See Peifer v. Peifer, supra, at page 273; Travellers Insurance Company v. Heppenstall Company, 360 Pa. 433, 440 (1948) ; Donaldson v. Maffucci, 397 Pa. 548, 558 (1959).

However, the significance of Allen's Appeal supra, in regard to this case is the following statement of the Supreme Court, by then Chief Justice Sharswood, pertaining to fraud as a ground for divorce:

The law ". . . assumes that the party in entering into so solemn a contract—involving the most important duties and responsibilities for life, and upon which his happiness so much depends—has made all proper inquiries or is willing to take the other party upon trust without inquiry. According to the form of the marriage service of the Church of England, each party takes the other 'for better, for worse, for richer, for poorer, in sickness and in health, to love and to cherish, till death them do part according to God's only ordinance.' The fraud must be in what has been sometimes termed the essentialia of the contract. False personation by one of another person would undoubtedly be such a case. As to any other it will be found difficult, after looking through all the authorities, to lay down any rule which can sharply define and distinguish what are and what are not essentials. Every case must, to some extent, depend on its own circumstances": 99 Pa. at page 200.

The court then held that concealment of pregnancy by defendant as a result of intercourse with one other than plaintiff, prior to the marriage, and when the facts established that plaintiff and defendant had not had intercourse before the marriage and plaintiff did not know of defendant's condition until after the marriage, constituted fraud and ground for divorce.

In dicta, the court noted that had plaintiff engaged in intercourse with defendant before the marriage or knew of her condition before the marriage, the fraud could not have been sustained.

With reference to "false personation by one of another person", stated by Chief Justice Sharswood in Allen's Appeal, supra, as being a clear case of fraud, it must be noted ". . . that such things as the name, rank, fortune, health, or character of a prospective spouse are not regarded as being 'essentialia' of the marriage relation, and misrepresentations with respect thereto have been held not to constitute such fraud as would in-

validate a marriage: 38 C. J. 1302, sec. 64; Ayres v. Ayres, 64 Pitts. L. J. 724 (1916). . . . Consequently, a mistake, whether resulting from accident, or even from fraudulent practices in respect to character, fortune, health, or the like does not render the marriage void: Bishop on Marriage, Divorce and Separation, 195, 196, sec. 459-60": A. B. v. C. B., 50 D. & C. 454, 456 (1944).

Accordingly, it is clear that a false personation by a spouse, under our present view, must be an extreme and shocking case in order to sustain a divorce on the ground of fraud.

In the following factual situations the courts have denied relief to plaintiffs where fraud and deceit were alleged and proven: Todd v. Todd, 149 Pa. 60 (1892), false claim of premarital pregnancy; Hoffman v. Hoffman, 30 Pa. 417 (1858), false claim of premarital pregnancy by plaintiff, when father was shown to be another but where plaintiff and defendant had engaged in premarital intercourse; Rowe v. Rowe, 6 D. & C. 347 (1925), false claim, prior to marriage, of being free of syphilis; Bradford v. Bradford, 79 D. & C. 363 (1951), false claim of having been in military service during period when defendant was proven to have been imprisoned; Santer v. Santer, 115 Pa. Superior Ct. 1 (1934), active misrepresentation of racial origin; Seibert v. Seibert, 3 D. & C. 142 (1923), misrepresentation of age; Tomlinson v. Tomlinson, 29 D. & C. 521 (1937), concealment of prior marriage and divorce on ground of adultery.

The issue presented here of concealment of mental illness and its relation to fraud as a ground for divorce has been discussed in the following cases: Snyder v. Snyder, 43 D. & C. 115 (1941), in which an annulment was granted upon proof that defendant was an epileptic at the time of the marriage, when the marriage law prohibited the issuance of licenses to epileptics; Zisser v.

Zisser, 60 D. & C. 21 (1947), in which an allegation of fraud based upon insanity at the time of the marriage was dismissed due to a failure in proof; Ayres v. Ayres, 64 Pitts. L. J. 724 (1916), in which defendant's father was misrepresented to be dead when he was actually in a mental institution was held to be insufficient to establish fraud; A. B. v. C. B., supra, in which defendant concealed that her maternal grandmother was inflicted with an inheritable mental disease which might affect the children of the parties was held insufficient to establish fraud; Thorp v. Thorp, C. P. No. 4, Phila., June term, 1933, no. 8027, in which the court held that antenuptial insanity and its concealment by defendant did not constitute fraud and in which the court entered a decree of annulment on the finding that defendant was insane at the time of the marriage ceremony.

It has been firmly established that postnuptial insanity, even though hopeless and apparently incurable, as in this case, is not a ground for divorce. Any ground alleged against an insane defendant must be proven to have existed before the defendant became mentally ill: Boyer v. Boyer, 163 Pa. Superior Ct. 520 (1949) ; Fisher v. Fisher, 154 Pa. Superior Ct. 497 (1944) ; Hickey v. Hickey, 138 Pa. Superior Ct. 271 (1940).

Accordingly, the factual situation pertinent to the issue of fraud in this case are those facts leading up to and culminating in the marriage of the parties in 1939.

The record establishes that defendant wife experienced an unhappy romance and was rejected by her suitor prior to her first confinement at the Norristown State Hospital from December 18, 1935, to May 29, 1936. Upon her admission, she was a difficult and withdrawn patient. On January 7, 1936, the hospital record noted: "Patient responded excellently to sodium amytol and continues to use tubs." It was testified that this treatment and use of drug was to promote relaxation and to relieve tension. There was no indication or proof

that defendant had lost the use of her memory during this first hospitalization. Thereafter, prior to her release on May 29, 1936, the hospital record entries which described defendant's great improvement within that six-month period, supra, were recorded. At that time it was noted that she had very good judgment, was very bright, cheerful and cooperative and that she seemed to have recovered. A year after her release, during which it was not necessary for her to receive further treatment, she was officially discharged from Norristown. That was in 1937.

As stated, supra, defendant suffered no further difficulty until 1949. It is of interest to note that the record establishes that the 1949 event which marked the beginning of her illness was her exclusion from a wedding party in which her husband participated. This event, apparently, constituted a serious rejection to her.

Plaintiff's medical witness, a psychiatrist at Norristown State Hospital who treated defendant, was unable to state that defendant's present mental state was in any way related to the causes of her 1935-36 hospitalization.

The record does not establish that defendant was suffering from a mental disease or was of unsound mind at or about the time of the courtship and marriage of the parties in 1939. As stated supra, the proof established that defendant did not experience any mental difficulties from 1936 to 1949, when her present illness began.

When the parties applied for their marriage license on May 25, 1939, defendant answered "no" to a question of whether she was ". . . an imbecile, epileptic, of unsound mind, or under guardianship as a person of unsound mind . . ." Her answer was, of course, truthful in light of this record. Furthermore, during the parties' courtship, defendant did not conceal from plaintiff any

mental condition with which she was then afflicted. Nor was she ever questioned by plaintiff about this aspect of her personal history.

Therefore, defendant's concealment of her prior hospitalization during the courtship of the parties was not a concealment which at that time affected her ability as an individual to enter into a marital relationship. Accordingly, defendant's concealment did not affect any essential element of the marriage relationship at the time of its solemnization because defendant was then of sound mind and perfectly competent to marry.

As stated in Allen's Appeal, supra, at page 200, the law ". . . assumes that the party entering into so solemn a contract . . . has made all proper inquiries or is willing to take the other party upon trust without inquiry."

It is this court's view of the law that what is meant by the essentialia of a marriage contract are those conditions and events which directly affect the ability of the parties to contract a valid marriage with the intent to carry out their marital responsibilities in good faith. Thus, in the Snyder and Thorp cases, supra, relief was granted when it was proven that defendants were not mentally competent at the time of the marriage ceremonies. Also, in Allen's Appeal, supra, the divorce was sustained upon the proof of defendant's concealed pregnancy by another at the time of the marriage. In all other cases referred to, supra, either the alleged frauds were not deemed to be of such serious nature as would call for the dissolution of marriage, or the proofs failed to establish that plaintiffs had been seriously misled and deceived.

It is this court's view that there is considerable wisdom in the law's reluctance to grant relief in divorce actions which are essentially based upon events in the personal history of one of the contracting parties. If such events do not relate to the condition of the parties

or their ability to enter into a valid marriage in good faith, they cannot be used to attack the marriage on the ground of fraud.

If the concealment of prior mental difficulties were to be recognized as a basis of fraud in divorce actions, then logically, numerous other types of illness should be afforded the same recognition.

In the case at bar, there is no proof to establish that defendant was not acting in good faith and with every proper intention for the future when she married plaintiff. She had made an excellent recovery from her mental illness, had not been treated for more than three years and had been officially discharged from the Norristown State Hospital. There is nothing to indicate to the contrary but that her hopes for the future were very bright. No further illness occurred until after ten years of marriage.

Accordingly, plaintiff has not established the allegation that defendant's concealment of her prior mental illness was willful and done with the intent to commit a fraud.

It is of interest to note that the Marriage Law of 1953 requires every applicant for marriage license to state whether or not he or she has been institutionalized for mental illness within five years of the date of the application. If an applicant has been institutionalized within that period, the question of whether or not a license will issue is to be decided by the Orphans' Court: Act of August 22, 1953, P. L. 1344, sec. 5, as amended, 48 PS §§1-5. This important and significant addition to the law does not apply to this case, since the marriage was contracted in 1939.

The factual situation presented in this case points up an important social problem which might well be the subject of study and consideration by the Pennsylvania legislature. The testimony indicates that defendant is incurably insane, and she has been a patient at Norris-

town continuously for more than ten years. Public policy might well decree a procedure for relief in such cases.

In accordance with the foregoing, plaintiff's exceptions to the master's report are dismissed and the recommendation of the master to the court is affirmed. Plaintiff's complaint in divorce, a vinculo matrimonii, is therefore, dismissed.